1820.

ROGERS
v.
ROSS.

ROGERS and others, *Executors of* HENDERSON, *against*
Ross, *Executrix of* Ross.

By a devise of *all the rest and residue of the real estate* of the testator,
the *rents and profits*, from the testator's death to the time of vesting
the estate, will pass : and whoever takes the legal estate, in the
mean time, will be responsible for the profits ; for the rents and pro-
fits, as well as the estate itself, may be given, by way of *executory
devise.*

The heir at law may be considered as a *trustee*, where it becomes ne-
cessary, to carry the intention of the testator into effect.

The rents and profits may accumulate in his hands, for the benefit of
the executory devisee, until the vesting of the estate. This Court
may, if necessary, appoint a *receiver* of them for that purpose.

And where the executory devisee was illegitimate, and it did not ap-
pear that the testator left any lawful heir, and no person appeared to
claim the inheritance, the *executor* of the testator who had taken
possession of the real estate, and was appointed guardian of the de-
visee, and received the rents and profits from the death of the testa-
tor, to the happening of the event on which the estate vested, was
held accountable for them, to the executory devisee.

*May* 13*th.*      THE original bill was filed, *March* 28th, 1818, *against
Robert Ross*, the testator. The plaintiffs' testator, *William
Henderson*, died the 19th of *January*, 1812, having, by his
last will, appointed the plaintiffs his executors. *Alexander
Henderson*, the father of *W. H.*, made his will, in *December*,
1804, by which, after directing his debts to be paid, and
giving certain legacies, he devised *all the residue of his estate,
both real and personal, to his son, W. H.*, (then living with
him,) *when he should arrive at the age of twenty-three years ;*
and he appointed *John Cortius*, of *London*, in the kingdom
of *Great Britain*, and *John Watts*, and *Robert Ross*, of the
county of *West Chester*, in this state, his executors. The
testator died soon after making his will. *Robert Ross*
alone proved, and took upon himself the execution of the

will. *W. Henderson*, at the death of his father, was seventeen years old, and *Robert Ross* was duly appointed, on the 11th of *January*, 1805, guardian of his person and estate. His father left a large personal estate, more than sufficient to pay all the debts and pecuniary legacies.

In the latter part of the year 1810, or 1811, *R. R.* rendered to *W. H.* then being above twenty-one years of age, an account of his executorship and guardianship, by which it appeared, that after deducting debts, and legacies, and expenses paid as guardian, there was a balance due *W. H.* of 462 dollars and 90 cents. Though, about that time, there was an acquittance or discharge executed by *W. H.* to *R. R.* for that sum, yet the plaintiffs charged that no part of the money was paid, but the whole remained due to *W. H.* at his death.

The bill further charged, that there was due to *A. H.* or *W. H.*, a large sum of money, in *Calcutta*, which *R. R.* had, or might have received, and which he had not accounted for as executor or guardian. That *A. H.* died seised of a valuable farm at *Pelham*, in the county of *West Chester*, and which passed to *W. H.* by the will of *A. H.* That *R. R.*, soon after the death of *A. H.* entered upon, and took possession of the farm, and received the rents and profits, until *W. H.* attained the age of twenty-three years; and that the yearly value was 1,000 dollars. The plaintiffs prayed for an account and payment of the sum of 462 dollars and 90 cents, with interest, from the time the account was rendered by *R R.*, and the *Calcutta* debt, and the rents and profits of the farm at *Pelham*.

*R. R.* died before answering the bill; and a bill of *revivor* was filed against *Ann Sharp Ross*, his executrix, who put in her answer to both bills. The defendant admitted the making of the wills of *A. H.* and of *W. H.*, and their deaths, and the appointment of *R. R.* as guardian of *W. H.* That the account was rendered by *R. R.* to *W. H.*, and was not paid when the discharge was executed; that it was rendered

Rogers
v.
Ross.

about the 21st of *February*, 1811, when *W. H.* was twenty-three years of age. That the balance was retained by *R. R.* with the consent of *W. H.*; that the same was to be advanced to *W. H.* from time to time, as occasion might require, and that *R. R.* had, accordingly, advanced to him the amount of 159 dollars and 8 cents; that *W. H.*, by his will, bequeathed to *R. R.* a legacy of 400 dollars, which had not been paid, and which she set off against the balance belonging to the estate of *W. H.* The defendant denied all knowledge or belief of the debt alleged to be due in *Calcutta.* She admitted that *A. H.* died seised of the farm at *P.* which passed by the will to *W. H.*, on his attaining the age of twenty-three years. The defendant averred, that *W. H.* was the illegitimate son of *A. H.*, and not his heir at law, and, therefore, not entitled to the rents and profits of the farm, which accrued previous to his attaining the age of twenty-three years; and she submitted whether she was bound to account for such rents and profits. She admitted that, as executrix of *R. R.* she had received assets to the amount of 20,000 dollars.

A replication was filed, and witnesses examined, and the cause was brought to a hearing on the pleadings and proofs.

The cause was argued by *T. A. Emmet*, and *P. J. Munro*, for the plaintiffs, and by *Harison* and *Wells*, for the defendants.

*For the plaintiffs*, it was contended, that admitting *W. H.* to be the illegitimate son of *A. H.*, it confirms the intention of the father, who had no heir at law, to give to the object of his bounty and affection, as expressed in the will, "all the residue of his estate, both real and personal." There is a peculiar hardihood in the claim set up by the defendant. *R. R.* without any pretence of title, but as guardian of *W. H.*, received the rents of the real estate, from the

death of *A. H.* until *W. H.* arrived at twenty-three years of
age and his executrix now refuses to account for them to
the person, in whose right they were received, under the
pretence that she may possibly be made to account for them
to the heir at law, though there is no such person in exist-
ence, or to the people of the state, who have never taken a
step towards an *escheat*, and whose title can commence only
·after an *office found*.

This is a sufficient answer to any objection as to the want
of proper parties; for there is no known heir at law, and
·the people have no interest, and the estate itself not having
*escheated*, and no office having been found, the people could
not now acquire any interest in the rents or profits. Be-
sides. the party who received the rents, or his legal represen-
tative, never having filed a bill of interpleader, but contest-
ing the right of the plaintiffs, all necessary parties are before
the Court. If the plaintiffs are entitled to the rents and pro-
fits, they can recover them from the legal representative of the
person who received them as a trustee; and if the defendant
is not accountable for them to the plaintiff, she is accounta-
ble to no person.

It is true, that if the testator had devised, specifically, the
farm at *Pelham* to *W. H.* when he attained the age of twen-
ty-three years, he being an illegitimate child, the devisee
would not, by force of the words, be entitled to the inter-
mediate rents and profits, but they would descend to the
heir at law, if not otherwise disposed of by express words
or necessary implication. (*Bullock* v. *Stones*, 2 *Ves.* 521.
*Stephens* v. *Stephens*, *Cases temp. Lord Talbot*, 228. *Gib-
son* v. *Lord Montfort*, 1 *Ves* 485.) Suppose, then, that
the testator, after a specific devise of the farm, in fee, to his
son *W. H.*, on his arriving at twenty-three years of age, had
devised all the rest of his estate, real and personal, to a
third person, would not the rents, intermediate the death of
the testator and the vesting of the executory devise, have
passed to such third person, under the authority of the case

1820.

Rogers
v.
Ross.

of *Stephens* v. *Stephens?* Suppose, after a specific devise of his farm, and giving specific legacies, the testator had devised all the rest and residue of his real and personal estate to his son *W. H.*, when he should attain the age of twenty-three years, would not those rents and profits, under the authority of *Gibson* v. *Lord Montfort*, pass, by these words, accumulate in the mean while, and vest in *W. H.* when he attained the age of twenty-three years? The position, both as to real and personal estate, that a devise of " all the rest and residue" will pass the rents and profits, from the testator's death to the time of the vesting of the executory devise, has not only been decided, but is clearly recognised by the best elementary writers. (*Fearne on Ex. Dev. Powell's ed.* 435, 436, 437. *Butler's ed.* 544, 545, 546. 6 *Cruise's Dig.* 520. tit. *Devise, ch.* 20. *s.* 40. *and the cases there referred to, especially Rogers* v. *Gibson,* 1 *Ves. jun.* 485.) Then what more is wanting to entitle the plaintiff to the rents and profits? Though *trustees* were interposed in the case of *Gibson* v. *Lord Montfort,* yet Lord *Hardwicke* decided on the general principle which has been stated.

As to any supposed difficulty, for want of any person bound to receive the rents and profits, the same difficulty would exist as to the farm itself. The law allows this kind of devise, and it is not affected by any consideration of who is, or whether there be, any heir at law, to whom the estate might, in the mean time, descend. There is no principle of law which establishes, that an executory devise of an estate in fee simple would not take effect, if the testator had no inheritable blood. Whoever takes the freehold estate itself, before the executory devise vests, takes the rents and profits, in the same way, subject to their being devested, and accounted for, on the happening of the contingency : or, if a *trustee* is wanting to carry the intention of the testator into effect, this Court has full power to supply the deficiency; and on an application for that purpose, a *receiver* might

have been appointed, to take the rents and profits, and put them out for accumulation, to be ultimately disposed of to the devisee, if he lived to the age of twenty-three years; and if he died before, to be accounted for to such person as might show himself entitled to them. The defendant's testator, indeed, took that office upon himself, without any appointment by this Court; but he is not the less accountable, according to the rules of this Court. If the testator had devised his farm to his son, as he has done, and had expressly devised the rents and profits accruing in the intermediate time, to him, could it be argued, that the latter devise would not pass any thing, for want of a person, other than the heir at law, to take the legal estate? There is not any ground or reason, after the decision of Lord *Hardwicke*, in the cases cited, for saying, that they would not pass by the general and sweeping words of the residuary devise. By the words, " all the rest and residue of his real and personal estate," the testator devises every thing not specifically devised, and which he could dispose of by will, at the time of its execution. Will it be said, that the testator had no power to dispose of the intermediate rents and profits? Or that he has specifically devised them? If not, they must necessarily pass by the residuary devise. It is not easy, perhaps, nor is it necessary, to ascertain the object of the testator. He may, probably, have intended, that his son should have no control over the property, until he arrived at the age of twenty-three years; and in endeavouring to impose this restriction, he has inartificially, and incautiously, perhaps, deprived him of the rents and profits, for his education and maintenance, in the mean time, and made them to accumulate, as a fund for him, when he should become possessed of the estate. It is clear, that he meant that all should go to that son, if he arrived at the age specified.

The observation of Lord *Hardwicke*, that the real and

personal estate being comprised in the same sweeping clause, is a strong argument against a resulting trust to the heir at law, is certainly of great force, when used to show the intention of the testator, in cases where no decisions have fixed a contrary rule; and it applies in all its strength to the present case.

*For the defendant,* it was argued, that if the devise to *W. H.* was an *executory devise,* which was admitted, it was only to take effect when the devisee arrived at the age of twenty-three years. The limitation was of the substance of the gift, and if he did not take at that age, it would be void. The question, however, as to the intermediate rents and profits, may be one of some difficulty. As the testator's real estate consisted only of the farm at *Pelham,* it will not be contended, that if he had specifically devised it to his illegitimate son, when he attained the age of twenty-three years, and then to him and his heirs, that the son would have been entitled to the intermediate rents and profits. (*Fearne on Ex. Dev. Powell's ed.* 434. *Cases temp. Talbot,* 44. *Hopkins* v. *Hopkins.*) In *Bullock* v. *Stones,* (2 *Ves.* 522.) Lord *Hardwicke* says, "Where there is an executory devise, whether of a legal estate, or of a trust estate in this Court, the rents and profits go to the heir at law; because the legal estate in the one case, or the trust in the other, descend, in the mean time, to the heir at law." It is true, that from a clause in the will in that case, directing his trustees to have the executory devisee well brought up and educated, Lord *H.* observed, that "the son's education must come out of the rents and profits, at least, as far as his maintenance and education goes." This, however, depended on the particular provisions of the will in that case, and shows, that the general doctrine was thought otherwise. It must be admitted, that the testator may, by express devise, or necessary inference, substitute a person to take the intermediate rents and profits in place of the

heir. And it is true, that the language of the elementary writers, cited by the plaintiffs' counsel, is, that a devise of all the rest and residue of real estate, will pass as well the profits from the testator's death, to the time of the estate vesting, as from the determining of the first estate, to the vesting of a subsequent one. But this language may well be considered as referring only to an absolute and immediate devise of such rest and residue, or such devise as must take effect, at all events, in some person or other. In the case of *Stephens* v. *Stephens,* there was an *absolute* devise of all the residue of the testator's real estate to his son-in-law, *T. S.,* (who was not the executory devisee,) which took effect immediately on the testator's decease. He, therefore, was substituted to the heir at law, to whom nothing could descend. The executory devises took effect, in succession, as soon as the devisees came in being. But the rents were not made to *accumulate,* in the mean time, for the benefit of the executory devisee, if there, afterwards, should be one. This case, therefore, does, by no means, establish the doctrine so broadly laid down. In the case of *Gibson* v. *Lord Montfort,* the legal estate, by the will, was immediately vested in trustees ; and there was not only a residuary *executory* devise taking effect, as soon as the daughter had a child, or children, but an *absolute* devise, in case of their failure, to other persons. Besides, there were other circumstances in the will, plainly indicating the testator's intention to have the rents and profits accumulate, and on which Lord *Hardwicke* appears to lay great stress. It is true, that he, also, lays stress on the real property being coupled with the personal ; and, therefore, thinks that the doctrine peculiar to the personal property, is to govern the construction as to the real, which would have been different, if it had stood alone. With all deference to so great a man, the necessity of determining, as to one species of property, by a rule applicable to property of a different description, seems not to be very apparent. If it was so, why should

*1820.*

ROGERS
v.
ROSS.

1820.

ROGERS
v.
ROSS.

he think it necessary to fortify his opinion by other consi-
derations. And why should he, in other cases, think it
proper to understand the same words in a different sense,
when applied to real or to personal property? In the cases,
however, just referred to, and in cases of a similar nature,
there is a person, other than the heir at law, who takes the
legal estate, or who, having it, is bound, as a *trustee*, by the
terms of the devise, at the death of the testator. In the pre-
sent case, there is no trustee; and if the devise is *executory*,
the legal estate must go immediately to the heir at law, if
there is one, for the freehold cannot be in *abeyance*. Now,
no case can be found of this description, where the heir,
necessarily taking an estate, for want of a person immediate-
diately entitled to it, has been converted into a trustee.
No provision is made in the residuary devise, for any person
to take the rents and profits, until *W. H.* should come of
age. The devise of the residuary estate to him, was as
much *executory* as the devise of the land itself; and the
executors, *as such*, had no right to interfere with the real
estate, unless to sell it for the payment of debts, in the way
which the law has prescribed, upon failure of personal
assets. Hence, probably, the solicitude of Lord *Hardwicke*
to show, in the case of *Gibson* v. *Montfort*, that the trustees
took an immediate fee.

This objection, at first view, appears fatal to the present
demand. If the heir at law alone could rightfully receive
the mesne profits, he, or those who stand in his place, ought
to have been made parties to the suit. *W. H.*, or his repre-
sentatives, could not lawfully receive the rents and profits;
for, at any rate, it can never be maintained, that he was en-
titled to the mesne profits, if the devise was *executory*, before
he arrived to the age of twenty-three years, when he took
possession of the farm. From that time to the commence-
ment of this suit, neither *W. H.* nor his representatives, took
any legal measures to obtain the rents and profits, but have,
until a short time before the bringing the suit, acquiesced in

the possession of them by *R. Ross*, and by this defendant, as his legal representative, for whoever might be legally entitled to them; and after such a lapse of time, this Court is called upon to decree in favour of the plaintiffs, without bringing the proper parties, or those who may be so entitled, before the Court.

THE CHANCELLOR. This case has been very well argued, and the main question is, whether the plaintiffs are entitled to an account of the rents and profits of the real estate devised to their testator, accruing between the death of *Alexander Henderson*, and the arrival of the devisee to the age of twenty-three years.

The words of the will of *Alexander Henderson*, on which the question arises, and which follow some pecuniary bequests, are these: " I give and bequeath all the residue of my estate, both real and personal, to my son, *William Henderson*, (now residing with me,) when he shall have attained the age of twenty-three years." He attained that age, and died. His father was seised of a real estate in the county of *West Chester*, and the rents and profits previous to the time that the estate absolutely vested in his son, *W. H.*, were taken by *Robert Ross*, the sole acting executor of the father's will.

If *W. H.* was the lawful heir of *A. H.* there would be no doubt of his right to the rents and profits, for in that case he must have been entitled to them either in the capacity of heir or of devisee. But the defendant has questioned, and, I think, successfully questioned, his right to those intermediate profits, as heir, by showing that he was an illegitimate offspring of his father, by a woman of *Bengal*.

The inquiry is then confined to his claim as a residuary devisee.

A devise of all the rest and residue of the real estate, will pass the *profits*, from the testator's death to the time of the vesting of the estate; and whoever takes the legal estate in

the mean time, will be responsible for those profits; and they, as well as the estate itself, may be given by way of executory devise.

One of the earliest cases, and a leading one on the subject, is that of *Stephens* v. *Stephens*, (*Cases temp. Talbot,* 228.) It was a case sent to the K. B. for their opinion, and Lord Chancellor *Talbot* decreed according to that opinion, and expressed his satisfaction with it.

The facts were simply these : *S.*, by will, devised to his grandson *A.*, his lands in fee, &c.; but in case his grandson *A.*, should happen to die before he attained the age of twenty-one, then he devised his lands to his grandson *B.*, in fee; and if he should die as aforesaid, then he devised his lands *to such other son of his daughter Mary, as should happen to attain the age of twenty-one,* in fee; and for default of such issue, then he devised the same to his granddaughters by his daughter *Mary;* and for want of such issue, then he devised the same to his brother *C.; and all the rest and residue of his estate, real and personal, he bequeathed to his son D., in fee.*

A third grandson claimed the estate as residuary devisee, and *Mary,* the daughter, claimed it as heir at law.

The Court of K. B. held that the devise to such unborn son, &c., was good by way of executory devise, and that the subsequent limitations were, of course, good; and, if one failed, the others would take place in succession; and if they all failed, the estate would go to *C.*, by virtue of the last remainder, in fee. And that, with respect to the *profits* received since the death of the grandson *A.*, or to be received until the estate should vest in some one person, by force of the executory devise, or go over to the remainder man, they belonged to *D.* by virtue of the residuary devise in the will, as an interest not before disposed of by the will.

This case establishes the position, that the intermediate profits arising on an estate given by way of executory devise, will pass by a devise of all the residue of the estate.

The next important case on this point is *Gibson* v. *Lord Montfort,* or, as it is sometimes cited, *Rogers* v. *Gibson.* (1 *Ves.* 485. *Amb.* 93. S. C.) The testator devised all his estate to trustees, in trust, to pay legacies, &c., and then, " as for and concerning *all the rest, residue, and remainder, of the real and personal estate,* after provision made for the payment of the legacies, he gave *to such child or children as his daughter should have lawfully begotten,* &c.; if his daughter should die without such issue, then to two other persons, to be equally divided between them."

One question in the case was, concerning the disposition of the *surplus* rents and profits of the real estate, after satisfaction of the charges, till such time as the executory devisee came *in esse;* and whether they went to the first taker of the residue, or to the heir at law?

It was said, on behalf of the devisee, that though, generally, the intermediate profits of an estate, to take effect on a future contingency, as well as the estate itself, would descend, yet that here the testator intended to comprehend all the profits under the term residue; that as it was admitted that giving the personal estate gave the profits of it, so by mixing both estates, the testator showed his intent, that the intermediate profits of the real estate should go the same way. It was urged, on the other hand, in favour of the heir, that here was an omission to give the intermediate rents and profits, for by a gift to one not *in esse,* nothing passed intermediately, and the estate, in the mean time, descended; that though the whole accumulating profits of the personal estate would go by the devise, by reason of the word *residue,* yet the same rule of construction was not applicable to the real estate; and that if ever favour was shown to an heir, it ought to be in the case of *an illegitimate daughter* amply provided for.

Lord *Hardwicke* said, the question was, whether the surplus profits were included, and went by the devise of the residue, or were to be considered as part of the real estate undisposed of;

and he admitted the heir would take the intermediate profits, if not sufficiently devised. They are thrown upon the heir by the law, as Lord *Talbot* said, in *Hopkins* v. *Hopkins*, (*Cases temp. Talbot*, 44.) for want of some other person to take. It was rightly admitted, that the profits of the personal estate passed by the residuary devise. Where the residue of the personal estate is disposed of, it will always take in the intermediate profits. He said, it was also admitted, that the testator might, by express words, dispose of the rents and profits of the real estate, accruing before the contingency happened, *either to the child when born,* or to the person to take when she died without issue ; and the only question was, whether, by express words, or necessary implication, they were, by the will, given away from the heir, and he was of opinion that they were. The testator had plainly declared an intention to dispose of his whole estate, and it was " pretty hard to say, that in any case, where one devises all the rest and residue of his real estate, the heir should be enabled to claim any thing out of it ; for how can he claim or take these intermediate profits?" He adverted to the case of *Stephens* v *Stephens*, as material to the construction of the words *rest* and *residue*, and as determining, that those words would take in the intermediate profits of the real estate devised on contingency, or by way of executory devise, and which would otherwise go to the heir at law, to whom the real estate would, in the mean time, descend. The construction given in that case, meets, more probably, the testator's intention, *when the devise is to a person in being, than when to one not in esse.* So, also, when both real and personal estates are comprised in the same sweeping clause, it is a strong argument against the claim of the heir, since it is admitted, that the surplus profits of the personal estate will pass by the devise. The surplus rents were, therefore, in this case, to be received by the trustees, and accumulated and laid up.

This case approaches much nearer than that of *Stephens* v. *Stephens*, to the one before me, for here the devise of the profits, as well as of the estate, passed to the executory devisee by the same residuary clause.

The same construction was given to the disposition of the *residue* of the real and personal estate, in the case of the *Duke of Bridgwater* v. *Egerton*, (2 *Ves.* 122.) That was a devise of real estate to the wife during widowhood, and then to the eldest son, *who should attain twenty-one years* of age. The wife married during the minority of the son, and Lord *Hardwicke* held, that the intervening profits, or those arising between the determination of the wife's interest and the majority of the eldest son, would fall into the *residue* of the real and personal estates respectively.

The case of *Bullock* v. *Stones*, (2 *Ves.* 521.) shows, that the testator may, by implication, as well as by express words, substitute a person to take the intermediate profits of a real estate descending to the heir, pending the contingency of an executory devise. The testator in that case devised all his real and personal estate in trust, and after debts and legacies paid, then to the first son of *A.*, (who was his heir at law, and under age, and had no child,) when he should attain twenty-one years, and *with a direction for his proper maintenance and education.* It was held, that the profits of the personal estate would accumulate and not go to the heir, and that the rents and profits of the real estate would descend to him, for where there is an executory devise, whether of a legal or trust estate, the rents and profits go to the heir, with the legal estate, in the one case, and the trust in the other. But the heir's son, under this direction in the will, would be entitled to the benefit of the rents and profits *from his birth*, so far as the same were requisite for his maintenance and education.

Upon the doctrine of these cases, there would seem to be no doubt, that the intermediate profits of the real estate

would go, by the general and sweeping words of the will, as well as the estate itself, to the son, *W. H.*, upon the vesting of the executory devise at the age of twenty-three, and that they would accumulate in the mean time, in the hands of the heir, for his benefit. It is pretty evident, that the testator did not intend to leave any part of his estate undisposed of. He has coupled together the disposition of his real and personal estate; and it is admitted in all the cases, that the profits of the personal estate go with that estate, under the word *residue*, to the executory devisee. This is an argument, according to Lord *Hardwicke*, for giving the same construction to the whole clause, and the construction presses the stronger, if the disposition, as here, be to a person in being at the time of making the will. Indeed, the case of *Gibson* v. *Lord Montfort*, would be perfectly analogous, (for there, also, was an illegitimate child who was the object of the devise,) if here had been a special trustee created to take the estate. The counsel for the defendant seemed to place reliance upon this ground, and it was said, that there is no case in which the heir necessarily taking an estate, for want of a person immediately entitled to it, has been converted into a trustee of the profits for the devisee. It was, also, said, that there must be an absolute devise of the intermediate profits depending on the contingency of an executory devise, to some person who can immediately take. But in *Gibson* v. *Lord Montfort*, there was no such absolute and immediate devise of the profits. They were given by way of executory devise, as well as the principal estate, and, as Lord *Hardwicke* observed, they were to be " received by the trustees, accumulated and laid up," to meet the event of the vesting of the estate. And why cannot the heir be considered as a trustee, when it becomes necessary to carry the intention of the will into effect? I presume, this Court might have appointed a *receiver* of those rents and profits, for the purpose of accumulation, and to abide the termination of the executory

devise. It will do it in many cases for the security of the fund, before any decision as to the right. The heir may be a trustee for those holding beneficial interests under a will. If a mortgage debt should pass, by a will of the mortgagee, without conveying the technical legal estate along with it, the heir of the mortgagee would be a mere trustee of the legal estate to the person to whom the debt was bequeathed. It is admitted, in *Gibson* v. *Lord Montfort*, that the profits may be given, by way of executory devise, to *the very person* to whom the estate is given on the like contingency.

This doctrine of accumulation is quite familiar in the practice of the *English* Chancery, and was well and most elaborately discussed, in the great case of *Thellusson* v. *Woodford.* (4 *Ves.* 227.) It seems to be entirely settled, that the profits of an estate may lawfully, under a will, be made to accumulate, for the reasonable period allowed for an executory devise to vest. In the last case referred to, the learned Judges who were called in to assist the Lord Chancellor, seemed to agree, that an accumulation till the contingency happens, may be given to the executory devisee, who was to take the thing from whence the accumulation was to arise; and that a tendency to perpetuity was not increased by giving the intermediate profits with the subject which produces them. The value of the thing devised was enlarged, but not the time. The words of Lord *Rosslyn*, in that case, are deserving of notice, as they admit, that the land may descend to the heir in the intermediate period, without his being entitled to the rents and profits. " The Court," he observes, " has never considered it as an essential condition affecting the validity of the devise, that the rents and profits should *attend the estate* during the time it is to go down, before the absolute property is given." And, indeed, the difficulty raised by the counsel for the defendant, is not to be met with, as a suggestion, in any case in which the subject has been discussed, nor has it been assumed any where, that some person, *other than the heir*, must be vested

with the legal estate, to, enable the testator to give the profits along with the estate, contingently, to the executory devisee. The testator's intention is the only subject of inquiry, and when it is sufficiently ascertained, it must prevail, and be carried into effect; and the Court would never suffer that intention to be defeated, for the want of a mere formal trustee of those profits. Whoever takes the land during the intermediate period, either as heir or devisee, takes it subject to the trust created by the will. Suppose the will had expressly declared, that the real estate was given to the son on his attaining the age of twenty-three, and that the intermediate profits of the estate were given to him on the like event, could there be any doubt in such a case, whether the lawful purpose of the testator was to prevail? To deny it would be to deny him the power, which seems to be every where admitted, of creating a valid executory devise of the profits of the estate. And if the intention of the testator can as well be ascertained by the words which have been used, the same conclusion must follow; and I am not able to perceive, that there is any solid foundation for the objection.

It is further urged, that the heir ought to have been a party; but when it does not appear from the case, whether the testator left any lawful heir capable of inheriting; and considering that no heir has ever appeared to claim the inheritance, and that the defendant's testator took possession of the estate, and received the rents and profits as the executor of *A. H.*, or as guardian for his son, I am not disposed to listen to this objection.

I shall, accordingly, decree, that the defendant account for the rents and profits of the real estate mentioned in the pleadings, with interest after one year from each period, and, also, that she generally account for the property received by her testator, as executor and guardian, subject to all just allowances; and I shall direct a reference accordingly, &c.

Decree accordingly.