The cause stood continued nisi, and at the succeeding March term, at Boston, the opinion of the Court was given by
* Parsons, C. J.
From the pleadings in this case, [*511] two questions arise ; whether a discharge of the defendant, pursuant to the insolvent acts of Rhode Island, admitting the same to have been obtained fairly and without fraud, is a bar to this action sued by the endorsee of the note; — and if it is, whether the facts disclosed in the replication will avoid the discharge, as having been fraudulently obtained.
As to the first question, it may be remarked that when the con tract was originally made, the parties were both citizens and inhab itants of Rhode Island, and that the contract was there made, and there to be performed. The laws of Rhode Island therefore gave effect to the contract, and by those laws must the legal operation of it be determined. When, therefore, the defendant was discharged from this contract lege loci, the promisee was bound by that discharge, as he was a party to the laws of that state, and assenting to their operation. But if, when the contract was made, the promisee had not been a citizen of Rhode Island, he would not have been bound by the laws of it in any other state ; and holding this note at the time of the discharge, he might afterwards maintain an action upon it in the Courts of this state.
The case before us supposes the transfer of a contract after it was made, but pursuant to the terms of it. When the note was endorsed to the plaintiff, the defendant, if the contract passed by the en dorsement, became a debtor of the plaintiff, who then became a party to the contract, having all the rights of the endorser. Therefore if the note had been transferred to the plaintiff, a citizen of this state, while it remained due, and undischarged by the insolvent laws of Rhode Island, those laws could not affect his rights in the Courts of law in this state, because he is not bound by them.
But on the admission that the note was discharged pursuant to the laws of Rhode Island, while it was the * property of a citizen of that state, who was bound by the operation [ *512 ] of those laws, the contract then no longer exists; and a subsequent endorsement of the note is void, because there is nothing to pass by the assignment, whether the endorsee be or be not privy to the discharge. A note functus officio cannot be negotiated. Thus *396 <f the promiser has bona fide paid a note to the promisee, while it was his property and unassigned, if the promisee should afterwards fraudulently endorse it to an innocent purchaser for a valuable consideration, yet the promiser might defend himself by proving a payment prior to the transfer, because by the payment the note was ipso facto discharged, and there was no subsisting contract to assign.
If the law were not so, the maker of a negotiable note might often be injured. He cannot demand a delivery of the note as a previous condition of payment; but he must pay the money due, and if a delivery is then refused, his remedy is by proving payment, which will avail him against a subsequent endorsee.
For these reasons, we are of opinion, on the first question, that a tegular discharge of the defendant from this note, pursuant to the laws of Rhode Island, where the contract was made, the parties interested in the contract being then citizens, and bound by the laws of that state, is a good bar to an action brought here, by a citizen of this state, by virtue of the endorsement of the note, made aftei the discharge thus duly obtained.
The second question is, whether the discharge was, or was not, obtained by fraud, and so void.
Before we can decide this question, we must refer to the insolvent laws of the state of Rhode Island. The act. immediately relative to this question passed in 1756, and among a number of provisions is the following: — that a majority of the creditors in number and value, then present by themselves or by their attorneys, shall and may have liberty to petition the said judges, praying [ *513 ] * that they, the creditors, may nominate and appoint three good men as commissioners or assignees but if the creditors, after having been notified as aforesaid, neglect to make their appearance before the said judges, and nominate .commissioners as aforesaid, that the judges shall proceed to appoint three good and discreet men as commissioners, to whom the insolvent debtor shall assign his estate. And in a subsequent section it is provided, that the insolvent debtor may retain, to his own use, such bedding and wearing apparel for himself, his wife and children, as the commissioners shall think reasonable and necessary.
In attending to these provisions, it appears that the creditors are not confined to any description of persons in their nominations, and they may, if they please, nominate creditors, and creditors friendly to the debtor. By the nomination alleged in the replication, they have exercised their rights, and fraud cannot be presumed.
But it is averred also, that the defendant aided in, assented to, and solicited this nomination; and we know of no law by which this conduct of his was prohibited. He had some interest in the *397 nomination, although a very trifling one. The quantity of bedding and wearing apparel he might reserve, depended on the discretion of the commissioners. But in other respects he had no interest. His conduct in the nomination might be very fair and reasonable, and without any fraudulent purpose. Indeed the replication alleges no fraudulent intent, and we cannot presume it.
If the discharge had been alleged to have been obtained by fraud, and the allegation had been admitted, the case would have come before us with a different aspect. As it is now presented on tnr.se pleadings, the bar appears to be good, and the replication must he adjudged bad (a).

Replication adjudged had.

 Walsh vs. Farrand, 13 Mass. 19. — Watson vs. Bourne, 10 Mass. 337. — Ogden vs Sanders, 12 Wheat. 213. — Le Roy vs. Crowningshield, 2 Mason, 151. — M. J. Story. Confl. Laws, 278.