## Case No. 14,115.

TOWNE et al. v. SMITH.

[1 Woodb. & M. 115; [1] 9 Law Rep. 12.]

Circuit Court, D. Massachusetts.    April, 1846.

EQUITY PLEADING—EFFECT OF ANSWER—NOTES—LOCUS CONTRACTUS — FEDERAL JURISDICTION — INSOLVENCY — DISCHARGE — ATTACHMENT LIEN.

1. The sworn answer of a defendant in equity, when responsive to material allegations in the bill,

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

must be taken as true, unless impugned by the testimony of more than one witness.

2. A note, made payable to the maker's own order, and by him indorsed, passes by delivery, as if it were payable to bearer; and the circuit courts of the United States have jurisdiction of an action brought against the maker, by a holder, who is a citizen of another state, where the amount in dispute exceeds $500.

[Cited in Brown v. Noyes, Case No. 2,023; Heckscher v. Binney, Id. 6,316; Phillips v. Preston, 5 How. (46 U. S.) 290.]

3. If a party be legally and properly discharged, as to any contract in the state where the insolvent system exists, the discharge must be held good in other states, and in the courts of the United States.

[Cited in Commercial Bank of Cincinnati v. Buckingham, 5 How. (46 U. S.) 316.]

[Cited in Bank of Utica v. Card, 7 Ohio (part 2) 171; President, etc., of Northern Bank v. Squires, 8 La. Ann. 318; Goodsell v. Benson, 13 R. I 249.]

4. But if the contract is made, or is to be performed abroad, such discharge is not a bar to the action.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015.]

5. It seems, that a negotiable note, not restricted on its face to be paid within the state, may be considered as payable wherever the indorsee may live; and if the indorsee live out of the state, it is not barred by a subsequent discharge in the state where the contract was made.

[Cited in Smith v. Babcock, Case No. 13,009.]

[Cited in Goodsell v. Benson, 13 R. I. 244; Brigham v. Henderson, 1 Cush. 432; Scribner v. Fisher, 2 Gray, 46.]

6. In such a case, the discharge will not avail in a court of the United States, unless the contract sued has been collusively assigned to a person living in another state, or the interest in it still remains in a citizen of the state in which it was made.

[Cited in Sohier v. Merrill, Case No. 13,158.]

[Cited in Felch v. Bugbee, 48 Me. 19.]

7. Whether the actual seizure of the property of an insolvent, under process issuing from a court of the United States, before his assignees under the state insolvent law take possession of it, creates a lien which will, in all cases, be sustained—quære.

[Cited in Perry Manuf'g Co. v. Brown, Case No. 11,015; Mississippi Mills Co. v. Ranlett, 19 Fed. 196.]

8. Whether, where an insolvent, living in Massachusetts, gives to a creditor, also living in Massachusetts, in payment of a previous debt, a note payable to his own order, and by himself indorsed, and the creditor sells the note in New York to a third person, living in New York, the note is to to be considered a contract, as between the debtor and such third person, made or to be performed in New York—quære.

9. H. & H., debtors, living in Massachusetts, gave to W. A. H. & Co., also living in Massachusetts, in payment of a previous debt, a note, payable to the order of H. & H., and by them indorsed. W. A. H. & Co. carried the note to New York, and sold it there, for a good consideration, to S., living in New York. S. commenced a suit against H. & H. in the United States circuit court for the district of Massachusetts, and attached the property of H. & H. thereon. H. & H. became insolvent under the law of Massachusetts, T. & T. were duly appointed their assignees, and H. & H. were discharged from their debts under such law. T. & T. then brought a bill in equity in the circuit court, praying that S. might be en-

joined from proceeding further in his suit against H. & H. in that court. The court, upon these facts, ordered that the bill be dismissed, on precedents in the supreme court of the United States, but doubting the correctness of their principles.

[See Banks v. Greenleaf, Case No. 959.]

[Cited in Goodsell v. Benson, 13 R. I. 253; Felch v. Bugbee, 48 Me. 15.]

[10. Cited in Taylor v. Carpenter, Case No. 13,785, to the point that a foreigner cannot, in the conflict of laws, enforce some rights, in cases of discharges in insolvency, which citizens may.]

This was a bill in equity, brought by the complainants [William B. Towne and another], as assignees of Christopher J. Horn and Benjamin F. Howe, insolvents under the statute of Massachusetts. It prayed an injunction against [James A.] Smith, a citizen of the state of New York, not to prosecute further in this court an action he had brought here against Horn & Howe, on a note given at Boston, in Massachusetts, to William A. Howe & Co., on the 29th of December, 1843, for $1,009.70, on demand, with interest. It averred, that the note run in form to Horn & Howe, the makers, or their order, and was by them indorsed, and that the suit thereon was commenced by Smith on the 6th of January, 1844, and the goods of Horn & Howe attached, which goods the complainants wished to have released under the injunction, in order that the complainants, or their assignees, might divide the proceeds equally among all their creditors. The bill farther averred, that Horn & Howe were insolvent when the last note was executed; that it was procured in the present form with a view to be sued in the United States court, by a citizen of some other state, in order to defeat the operation of the insolvent law; that it was sold for this purpose to Smith, he knowing the design, and that the action on it was prosecuted by collusion, for the benefit of William A. Howe & Co., and that Horn & Howe had since been discharged from all their contracts made in Massachusetts. Some other allegations were introduced, which it is not material to detail; and eleven interrogatories were propounded to the respondent, on matters connected with the bill. The answer professed ignorance, and left the complainant to prove some of the matters, but admitted the sale of the note to him at twenty-five per cent. discount in New York, by William A. Howe—saying, the promisors were related to him, and he did not like to push them, and that the delivery, and obligation given for it, were not completed till the respondent arrived in Boston. It also admitted, that some previous acquaintance had existed between Smith and Howe, but denied any relationship or secret trusts as to this transaction, or any knowledge of the insolvency of Horn & Howe, or any design in William A. Howe & Co. to evade, by the note and suit, the insolvent laws of Massachusetts. It further denied any consultation with them or their counsel on this sub-

ject, but the respondent was advised by his own counsel to sue, and attach property at once, if the note was not paid on presentment. It denied, also, any borrowing of money of them since, in connection with the present transaction, and insisted that the purchase of the note was bonâ fide, and for a valuable consideration. The answer was sworn to, and had, annexed, a copy of the note, to show it was not made payable, in express terms, at Boston. The only testimony offered in the case to impugn that part of the answer, which denied allegations in the bill, was that of William A. Howe. But it did not appear to conflict, in any respect, with the answer, except that it gave, as additional information, that the consideration of the note in suit was a former debt from the same promisors, for goods sold and delivered, and money lent; that, on the 29th of December, 1843, the promisors were insolvent, and before that he had expressed fears, if pressed hard, they would fail; that the note was then made in its new form at his request; that he went immediately to New York to sell it, knowing that a New York creditor had some advantage, and not liking to sue the makers himself, but said nothing to Smith as to their solvency or a suit, though informing him they were in business, with a stock of goods of considerable value. Smith did not say he would buy the note to accommodate him, nor was there any indemnity given, nor any advice to him, that he might evade the insolvent law of the state in this manner.

William Brigham, for complainant.

E. D. Sohier, for respondent.

WOODBURY, Circuit Justice. When this bill was filed, a temporary injunction was granted till the hearing. The question now is, shall it be made perpetual, or be dissolved? Both the facts and the law, as bearing on this question, are controverted. As to the facts, however, the answer to the bill must, under all the circumstances, be regarded as containing the truth in relation to the transaction. Because it is sworn to; is responsive to the material allegations; and, so far as contradicted at all, it is only by the testimony of one witness. But no answer, thus situated, can, as a general rule, be disproved or annulled by the testimony of one witness. See Daniel v. Mitchel [Cases Nos. 3,562 and 3,563], and the numerous other cases cited in Carpenter v. Providence Ins. Co., 4 How. [45 U. S.] 185, where the various exceptions and limitations on this point have been collected and explained. The answer denying any fraud, or collusion, or trust, all of those must be considered as out of the case. The testimony of William A. Howe would, to be sure, justify several inferences against the answer, which it does not, in terms, admit. Thus, the taking of a new note, after a knowledge that the makers of the old one were in-

solvent, and taking it in a new form at the creditor's request, so that it might be passed to persons living in another state and sued in this court; and going forthwith to another state and selling it, and the purchaser returning and ascertaining property could be attached to secure it, before closing the bargain, and then closing it, and making the attachment immediately; all these would furnish strong grounds to infer, not only that he intended to make the sale to evade the insolvent law, but that the purchaser took it under a like conviction, if not from a like motive. But these inferences, so far as they might otherwise affect Smith, the purchaser, and his rights, are repelled by his positive oath to his answer; and are impugned only by inferences from what is testified to by one witness alone. I am compelled, then, though with some reluctance and distrust, to regard the transaction, in point of fact, as the respondent asserts it to be, a bona fide purchase of the note in question, for a valuable consideration, by a citizen of another state, and without any secret trust or condition whatever.

The next objection which occurs, to proceeding further in the suit at law, and in favor of a perpetual injunction, is, that the plaintiff in it, though an honest purchaser of the note, cannot maintain a suit in this court on it, because chapter 20, § 11 [1 Stat. 78], of the judiciary act of September 24, 1789, deprives an assignee of a contract of that right, though living in a different state, if the assignor was an inhabitant of the same state with the maker, as in this instance. Humphreys v. Blight [Case No. 6,870]; [Montalet v. Murray] 4 Cranch [8 U. S.] 46; [Gibson v. Chew] 16 Pet. [41 U. S.] 315. But we have jurisdiction over this action, because a note, in the particular form of this, passes by delivery, and not assignment. It runs to the promisors and their order, and, being then indorsed by them, is regarded in law as if running to bearer. Smith v. Lusher, 5 Cow. 688, 711; Wildes v. Savage [Case No. 17,653]. And in the cases of Bank of Kentucky v. Wister, 2 Pet. [27 U. S.] 318. 326; Bonafee v. Williams, 3 How. [44 U. S.] 576, 577; Bradford v. Jenks [Case No. 1,769]; and Bullard v. Bell [Case No. 2,121],—it has been held, that an action lies in this court by the holder of a note to bearer, if living in a different state; because, it is a promise virtually to pay any person holding it, and not merely the original holder, and does not pass to others by any assignment. Even an indorsee, living in another state, can now sue his indorser in the United States courts on the new contract of indorsement; because he claims on the new contract, and against the indorser, and not on the old one, through the assignment, and against the maker. Young v. Bryan, 6 Wheat. [19 U. S.] 146; Mollan v. Torrance, 9 Wheat. [22 U. S.] 537. If promissory notes had been as extensively used in 1789 as bills of exchange, they probably would have been excepted from the stringent restrictions that still remain against them. The United States, when indorsees of a note, are now relieved from them, and may sue the maker in the federal courts under their peculiar powers, by a different clause in the judiciary act. U. S. v. Greene [Case No. 15,258].

The case standing in this attitude, the only remaining question is, whether the holder of the note can, on the facts, as proved, and heretofore detailed, be properly prevented from availing himself in payment of his attachment? The 5th section of the Massachusetts insolvent law, passed April 23, 1838, provides expressly, that "the assignment shall be effectual to pass all the said estate, and discharge any such attachment." If the holder then had brought his action in a court of the state of Massachusetts, or if it is here to be treated in all respects as if brought there, the suit could not proceed upon general principles, and must come within one of the exceptions, that will hereafter be explained, or the property attached ought at once to be restored to the complainants, who are the assignees of the debtors—to be divided equally among all the creditors, in comformity with the provisions of the insolvent law. It would be a proper case for a perpetual injunction, such as is prayed for by the complainants. 2 Story, Eq. Jur. §§ 874, 904; Logan v. Patrick, 5 Cranch [9 U. S.] 288. But the respondent resides in another state, and having secured his debt by superior vigilance and skill in the courts of the United States, without resorting to those of Massachusetts, he insists that this advantage ought not to be taken from him by any application of her insolvent system to his case. Whether it can be, under the words and true spirit of that system, or the principles of international and commercial law, or the rules proper for the construction of contracts, or the precedents applicable to the subject, is the next inquiry; and being an important one, it may be useful to pursue it with a scrutiny more close and extended than is usual in ordinary cases. The insolvent law (St. 1838, c. 183, § 7) provides that the debtor, by the certificate, shall be "absolutely and wholly discharged from all debts, which have been or shall be proved against his estate, assigned as aforesaid, and from all debts, which are provable under the said act, and which are founded on any contract made by him within the commonwealth, or to be performed within the same, and made since the passing of the act aforesaid." These words are certainly broad enough, in their common acceptation, to discharge the debtor living here, from all contracts made here and to be performed here, after the passage of the act; and not merely to relieve his body from imprisonment on such contracts in future. Most of the early insolvent systems in this country only discharged the body eo nomine on a surrender

of property, and were "Poor Debtors' Acts." as called here, or "Lords' Acts," as in England. 2 Tidd. 978; 6 Durn. & E. [Term. R.] 366. And such discharges were no bar to subsequent actions on the debts or contracts, or to attachments, and a satisfaction of the judgments on any property of the debtor, which could afterwards be found. [Sturges v. Crowninshield] 4 Wheat. [17 U. S.] 122, 200; [Mason v. Haile] 12 Wheat. [25 U. S.] 370; Beers v. Haughton, 9 Pet. [34 U. S.] 329. But the law, under which the defendant has already been discharged, is in respect to future contracts, which is this case, as extensive as most of the bankrupt laws abroad, or in this country, and purports to reach the contracts or debts of the insolvent, and to relieve him "absolutely and wholly" from them, and thus to be a bar to any suit whatever, and not merely to exonerate his body from future arrest.

The changes, in most of the state insolvent systems, do not seem to have been always noticed critically by the courts in acting on discharges; and decisions made and opinions formed properly—that discharges should not avail in other states, at a time when only the body, and not the debt, was professed to be released, and thus affecting only the remedy —have been retained, and applied, after material changes in many of those systems professing to release the debt as well as the body, and hence affecting the cause of action as well as the remedy; and, therefore, often requiring that discharges should avail in other states, and be treated everywhere as a part of the lex loci contractus. It is, I fear, in part, from some inattention to the nature and history of these changes, that some insolvent systems, though using general language discharging the contract or debt, like that in Massachusetts, have still been treated as if exonerating only the body, or such property as was then situated within the state that passed the law; and hence, have been restricted to a defeat of the remedy only or the action, and not extended so as to be a release of the contract or debt. The difference between these is very material; and whether the insolvent law of Massachusetts should be so treated or not, is, under some views, very decisive of the present case. Because, if the debt itself is not to be considered as discharged by it, but only the remedy affected, a suit can always be sustained in another state, or in the courts of the United States, on the old debt, after such a discharge. [Ogden v. Saunders] 12 Wheat. [25 U. S.] 213; 10 Wheat. [23 U. S.] 151; [Beers v. Haughton] 9 Pet. [34 U. S.] 329. Where the body, by the poor debtor's oath, had been discharged in Massachusetts on a judgment and commitment, it is no bar to debt on the judgment in New Hampshire, Hubbard v. Wentworth, 3 N. H. 43. But if the debt is to be considered as discharged, treating the system as a part of the lex loci contractus, no suit could afterwards, in cases

generally, be sustained anywhere on a contract, made and thus discharged in the state in which the system exists, unless the contract was to be performed elsewhere.

The decided cases, that bear on the construction which ought to be deemed proper, are numerous, and somewhat conflicting. Some of them, looking to the influence of such discharges, as being confined to the remedy alone, have, as in Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, 258, held, that they operate between citizens of the state where the suit is brought and the discharges were issued; even though a contract is sued there which was made abroad. Under that view, such discharges are deemed to be a modification of the remedy on everything prosecuted there against the insolvent, though on a contract made abroad. But such would not be the case in Massachusetts under its insolvent system; as by the certificate it is, in express terms, to discharge only such contracts as were made "within the commonwealth." Looking to the influence of such discharges on the contract, as other classes of cases do, it has been held, that when one of the contractors, the payee, after a discharge, both being in the same state, indorses a note made there to a citizen of another state, and it is sued in another state, the discharge is a bar. Baker v. Wheaton, 5 Mass. 509. Because the original creditor assented to the insolvent law, and lived under it when it took effect, and it operated on the contract itself wherever it went, having been a part of the lex loci contractus. Again, it has been held, if the note either had been given to a person belonging to another state, or had been indorsed to one, before the discharge issued, the latter would be no bar, when the contract was sued in the courts of another state. Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, 363; Braynard v. Marshall, 8 Pick. 194 [6 Mass. 509].[2] The first hypothesis or position in this ruling, looks rather to the contract itself, as if made or to be performed elsewhere, while the last one looks more to the remedy, and is very near the case now under consideration. In Watson v. Bourne, 10 Mass. 337, a creditor, living in Massachusetts, sued the debtor in another state, and recovered judgment, which was afterwards there discharged by an insolvent law. Then an action was brought on the judgment, in Massachusetts, and the discharge held to be no bar, as the plaintiff never lived in the state issuing the discharge, and both parties must live in the state discharging the contract, in order to bar the action. This case must have been decided, looking to the remedy rather than the debt; but its correctness, in any view, is questioned in 12 Wheaton.

It has been laid down, also, generally, that the insolvent systems of each state are valid, as to its own citizens, on all posterior con-

2 [From 9 Law Rep. 12.]

tracts, but invalid as to all other persons and contracts. [Ogden v. Saunders] 12 Wheat. [25 U. S.] 368, 369. This limitation to posterior contracts is not new; and the Massachusetts insolvent law, in terms, applies only to contracts "made since the passing of the act." But to say, virtually, that there is no power in states so to regulate the contracts made within them, as to affect those contracts in the hands of citizens of other states, is more novel, and seems to look rather to persons, than to contracts, or the remedies on them. To analyze further a few leading cases. In Potter v. Brown, 5 East, 124, a bill of exchange was drawn in the United States in favor of a citizen of the United States. though on a drawee in England, not accepted, and afterwards the drawer was sued in England; the action was held to be barred by a discharge in the United States under the bankrupt law of 1799. It was thought, that the comity of nations required such a course to be pursued. Hunter v. Potts, 4 Durn. & E. [Term R.] 182; Smith v. Buchanan, 1 East, 6; Folliott v. Ogden, 1 H. Bl. 123. But in Braynard v. Marshall, 8 Pick. 194, the court felt bound, by Ogden v. Saunders [supra], to hold, that the remedy alone was affected by insolvent systems, and hence that discharges under them operated only in suits that were brought in the states which created them. And if not bound by that case, the court seemed to think, that a discharge in New York, where a note was made, was to be treated as no bar to a suit on it by a citizen of Massachusetts, to whom it had been negotiated. It was not payable on its face expressly anywhere; and the court considered it as payable wherever it was held; and if in Massachusetts, by one of its citizens, he was not barred or estopped to recover by any laws in New York. See, also, 10 Mass. 337. But in Pitkin v. Thompson, 13 Pick. 64, the discharge is regarded as a part of the lex loci contractus, and hence a discharge of a wife in Rhode Island, on a contract there, the creditor also residing there, is a discharge to a subsequent suit in Massachusetts, against the wife of a new husband. It was not considered a question of remedy merely, but went to the cause of action, and was governed, not by the lex fori, but the lex loci contractus. The Massachusetts cases have almost inevitably got confused, by the doubts and differences of opinion among the judges in the United States court in Ogden v. Saunders and Sturges v. Crowninshield [supra]. See on this 8 Pick. 194. In Blanchard v. Russell. 13 Mass. 1, the place of the original discharge, was the place in which the debt arose and was payable, being an account for property sold belonging to a creditor in another state, and who brought an action in the other state. It was in this case regarded as a part of the lex loci contractus, or substantially as a part or condition of the contract itself. and the insolvent law was in deed, as it was in terms and design, a law, under certain specified circumstances, to discharge "the debt." See the form of it in 8 Pick. 194. In Proctor v. Moore, 1 Mass. 198, the discharge was not held to be a bar, as it did not appear that a contract was made in the state where it issued, or that the plaintiff resided there. But it would be too tedious, and is hardly necessary, to pursue this analysis of particular cases further, through all the variegated and conflicting views which have prevailed on this subject. These are adduced merely to illustrate some of the different positions which have been taken. As a legitimate consequence of them, it has been laid down, that if a party be legally and properly discharged, as to any contract in the state where the insolvent system exists, the discharge must be held good in other states. 2 Kent, Comm. 393. So it must be in other courts, as this of the United States. But this still leaves the great question open, what contracts can thus be legally and properly discharged? And whether that now in controversy has been so discharged in Massachusetts? Must we hold to be discharged only those sued in the courts of the state which has the insolvent system? or all those made or to be performed in that state, wherever they may be sued? The adjudications, as already seen, have been very different on this subject; some considering the discharge as affecting merely the remedy, and hence not respected, except in suits in the courts of the state, possessing the insolvent system; while others consider it as a part of the lex loci contractus, and thus to be respected in all states and courts wherever the contract goes, if the contract was made or was to be performed in the state where the insolvent system prevails. More cases of both of these descriptions exist, in addition to those already cited; and some, where the decisions seem to be of a mixed character, or to rest on some exceptions to the general rule. It may be useful to classify most of these, and examine their weight and bearing in this court and in this cause. before forming a final conclusion as to the construction of the discharge. which must be given in the present case. Thus. although the spirit of insolvent laws generally, which are passed by different states, is to relieve their own citizens on their own contracts, it has been held, in the courts of the United States, that this cannot be effected, usually, except where they are sued in the states which passed the laws; and one reason offered for it is, that such powers are local, and hence the operation of the laws must be local. See the leading cases before cited of Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, and Ogden v. Saunders, 12 Wheat. [25 U. S.] 213. In conformity with this view, other cases in those courts and in the state courts, some of which have before been referred to, hold, that discharges under those laws are no defence to suits, even within the states passing them, if brought by persons not citizens of those states, and who have not proved their debts under the commission.

See in [Ogden v. Saunders] Id. 272; [Sturges v. Crowinshield] 4 Wheat [17 U. S.] 122; Clay v. Smith, 3 Pet. [28 U. S.] 411; Woodhull v. Wagner [Case No. 17,975]; Story, Confl. Law, § 340; 2 Kent, Comm. 390; 8 Pick. 194; 9 Conn. 314. And to them may be added the following authorities, as with them composing a summary of most of those which support the general doctrine that insolvent laws affect only the remedy: Boyle v. Zacharie, 6 Pet. [31 U. S.] 635; Beers v. Haughton, 9 Pet. [34 U. S.] 329; Watson v. Bourne, 10 Mass. 337; semble, 1 Mass. 199; Suydam v. Broadnax, 14 Pet. [39 U. S.] 75. Other cases deny this, unless the actions are brought on contracts either made or to be performed elsewhere. [Millar v. Hall] 1 Dall. [1 U. S.] 229; [Emory v. Greenough] 3 Dall. [3 U. S.] 369; 3 Caines, 154; 2 Johns. 198, 235; Hicks v. Brown, 12 Johns. 142. And to these may be added the following, as with them composing a summary of most of the authorities which support the general doctrine that insolvent laws, where relating in terms to the debt or contract, are to be considered a part of the lex loci contractus, and hence govern the contract, wherever the creditor may live: Le Roy v. Crowninshield [Case No. 8,269]; Baker v. Wheaton, 5 Mass. 509, 13 Mass. 1; Pitkin v. Thompson, 13 Pick. 64, 68; 3 Burge, Col. Law, 876–925; 3 Story, Confl. Law, §§ 281, 284; 2 Kent, Comm. 390. But if the contract is made or is to be performed abroad, the cases, with scarce an exception, hold that such discharges are not a bar to the action; and the following authorities may be regarded as a summary of most of those which sustain this exception: Cook v. Moffat, 5 How. [46 U. S.] 295; McMillan v. McNiel, 4 Wheat. [17 U. S.] 209; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, 272; [Farmers' & Mechanics' Bank v. Smith] 6 Wheat. [19 U. S.] 131; Suydam v. Broadnax, 14 Pet. [39 U. S.] 67; [Cox v. U. S.] 6 Pet. [31 U. S.] 172; [Boyle v. Zacharie] Id. 635; 5 Mass. 509; 10 Mass. 337; 3 Caines, 154; 2 Kent, Comm. 393, note; Story, Bills, § 165; Story, Confl. Law, § 342; 3 Burge, Col. Law, 925; Lewis v. Owen, 4 Barn. & Ald. 654; Phillips v. Allan, 8 Barn. & C. 477; Smith v. Buchanan, 1 East, 6; 3 Knapp, 265; Green v. Sarmiento [Case No. 5,760]; Sherrill v. Hopkins. 1 Cow. 103; Ory v. Winter, 8 Mart. [La.] 277. Neither are they considered a bar, if the contract has been sued and reduced to a judgment elsewhere. Green v. Sarmiento [supra]. Or if it was made before the insolvent act passed, and that undertakes to release the debt, and thus impair the obligation of the contract. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122; Farmers' & Mechanics' Bank v. Smith, 6 Wheat. [19 U. S.] 131. And, in connection with one branch of the exception before referred to, as to contracts to be fulfilled elsewhere, it has been held in Braynard v. Marshall, 8 Pick. 194, that a negotiable note, not restricted on its face to be paid within the state, may be considered as payable wherever the indorsee

may live; and is not bound by a subsequent discharge in the state where the contract was made. But Judge Story, in his treatise on Bills of Exchange (section 158), opposes this doctrine of the last case, and so do Blanchard v. Russell, 13 Mass. 1; Prentiss v. Savage, Id. 23; 9 Barn. & C. 208. Living out of the state is not enough. 16 Johns. 233; 3 Caines, 154. It must appear on the face of the contract to be payable elsewhere. Bank of Orange Co. v. Colby, 12 N. H. 520; Ory v. Winter, 8 Mart. [La.] 277. On this and all other doubtful points it may be proper, on the principle of the common law, to lean towards vigilant creditors, as against others less watchful, and against such debtors as have been improvident. For, although it is true, in some instances, that equality is equity in respect to an insolvent's estate and his creditors, yet, at the same time, vigilance in getting secured before a failure, is usually to be protected, if there be no fraud or collusion with the debtor.

Under these rules of construction, then, and such others as have before been adverted to, it seems to be certain from the precedents in the courts of the United States, that such discharges will not be allowed to avail there, unless the contracts sued have been collusively assigned to persons living in other states, or the interests in them still remained in citizens of the states in which they were made. Looking to their effect on the remedies only, as is the course of those courts, a suit in them is not considered as if brought in a court of the state of Massachusetts. Citizens of other states may sue there, when her citizens cannot. They may sue, also, in cases of equity when hers cannot. These courts hold, likewise, that a state law cannot, by its insolvent system, impair these rights of citizens of other states. Suydam v. Broadnax, 14 Pet. [39 U. S.] 67. And a discharge under it has been solemnly decided, after the fullest argument and repeated consideration, not to be a bar to actions in the United States, by citizens of states other than that one issuing the discharge. [Ogden v. Saunders] 12 Wheat. [25 U. S.] 213; Boyle v. Zacharie, 6 Pet. [31 U. S.] 635; and others before cited. Though a state bankrupt court may give notice to all the world, and attempt to bind all, yet it is held that the citizens of other states are not obliged to go there, but may stand on their rights elsewhere, and enforce them elsewhere, if they can find property. They are only estopped in the courts of that state so far as regards remedies. [Ogden v. Saunders] 12 Wheat. [25 U. S.] 368.

Having thus presented some of the leading precedents on this subject, and especially in the United States courts, with some of the reasons and the text-books, whether sustaining or impugning them, it will be seen that the cases in the supreme court of the United States have been so numerous, and

so fully argued and considered, as to make it difficult for any of the judicial tribunals of the general government to disregard and decide against them, till they are changed by the court which made them. But, at the same time, I feel compelled to differ in principle from some of their general reasoning and conclusions; and it may be proper, as due to myself and the importance of this case, to explain the grounds of the difference, even if unable to carry them out consistently with a proper respect to established precedents. It is difficult, to my mind, to discover any sufficient reasons, why states, if rightfully passing insolvent laws, which purport to discharge subsequent contracts or debts, and not merely remedies, should not have the discharges construed as controlling the contracts made under, or subject to them, and to be performed there, although they may happen to be prosecuted elsewhere. Insolvent laws of that kind, like any other state laws affecting contracts, seem entitled to be considered as a part of the lex loci contractus; and if so, are to be respected, and are to control the contract, travelling with it, and being inseparable from it wherever it goes. It is conceded, even by those holding a different doctrine on this subject, that states may rightfully pass insolvent laws when congress does not. They must be prospective, and not impair, as the Massachusetts act does not, the obligation of existing or prior contracts. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122; [Ogden v. Saunders] 12 Wheat. [25 U. S.] 213; Farmers' & Mechanics' Bank v. Smith, 6 Wheat. [19 U. S.] 131. Johnson, J., in [Ogden v. Saunders] 12 Wheat. [25 U. S.] 273, says that was the whole decision in Sturges v. Crowninshield. 2 Kent, Comm. 392. It is probable that originally it was contemplated, that states might always pass insolvent laws, and congress never; but only bankrupt laws, and applying to merchants, and being retrospective as well as prospective. See 4 Wheat. [17 U. S.] 194, 195, on this, in Sturges v. Crowninshield. It has been held, too, in the courts of the United States, that states may discharge the body from arrest without impairing the obligation of the contract itself, though previously made. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, 209; [Farmers' & Mechanics' Bank v. Smith] 6 Wheat. [19 U. S.] 131; 2 Kent, Comm. 392; Beers v. Haughton, 9 Pet. [34 U. S.] 329; [Mason v. Haile] 12 Wheat. [25 U. S.] 370. Or they may discharge his subsequent acquisition of property. [Ogden v. Saunders] 12 Wheat. [25 U. S.] 213. In fine, the settled principle is now, on other matters, that the lex loci contractus, if the place of performance also, must govern the construction and extent and nature of the contract, but not the remedies on it. These last depend on the law of the place where it is sued. [Eliason v. Henshaw] 4 Wheat. [17 U. S.] 225; [Harrison v. Sterry] 5 Cranch [9 U. S.] 298. The lex loci explains the contract, but does not enforce it. It would then follow, that, although a mere local bar or discharge will not operate against a citizen of another state, or on property in another, different from that state, in which the insolvency occurred, nor will any mere local privilege ([Ogden v. Saunders] 12 Wheat. [25 U. S.] 361; [Harrison v. Sterry] 5 Cranch [9 U. S.] 298; 2 Kent, Comm. 392); yet, whatever goes further and avoids a contract there, or bars a debt absolutely, ought, on general principles, to avoid or bar them elsewhere. Though some cases then, in this country, hold, that a bankrupt's or insolvent's certificate is only a local privilege, yet, in others, in several of the states as well as abroad, such discharges, when professing to reach the contract or debt, as in this instance, are considered as not merely local, not merely affecting remedies within the state that grants them, but they are entitled, on principle, to exert power over the contracts, when going elsewhere, and to release them on the terms prescribed, within the state where made and where to be performed; wherever else the creditor may happen to reside. The whole difficulty in this view is, in deciding what relates to the remedy and what to the contract, or what is local and connected with judicial forms or proceedings only, and what relates to obligations themselves. Thus, priority on the part of a particular creditor has been considered as belonging to the remedy ([Harrison v. Sterry] 5 Cranch [9 U. S.] 298); and so has imprisonment of the body of the debtor ([Sturges v. Crowninshield] 4 Wheat. [17 U. S.] 200); so statutes of limitation and usury laws (Le Roy v. Crowninshield [Case No. 8,269]; 3 Johns. Ch. 190; [Sturges v. Crowninshield] 4 Wheat. [17 U. S.] 200); and so laws concerning processes in state courts till adopted by acts of congress or rules of this court, ([U. S. v. Robeson] 9 Pet. [34 U. S.] 319; [Bank of U. S. v. Halstead] 10 Wheat. [23 U. S.] 51); or any exemption of particular kinds of property, and of persons engaged in particular duties, from arrest (11 Mart. [La.] 730; 16 Johns. 244, note b); or any privilege clearly attached to the person or territory only, and not to a contract (3 Burge, Col. Law, 234, 1046; Story, Confl. Law, § 339; 7 Greenl. 337; Hinkley v. Marean [Case No. 6,523]; Titus v. Hobart [Id. 14,063]). But discharges of debts or contracts do not belong to the processes of courts or their forms. They relate to obligations, to duties, to the essence or gist of the action. See other cases in Bronson v. Kinsie, 1 How. [42 U. S.] 311; McCracken v. Hayward, 2 How. [43 U. S.] 608, 612. And though some books and cases speak of pleading a certificate as if it was a personal privilege and related to the remedy alone, and though the original debt is still held to be a good ground for a new promise, the conscience being, in some cases,

still bound, and the insolvent at liberty to waive the plea (1 Chit. Pl. 91; 12 East. 664; 1 Bos. & P. 52); yet this can often be said of any other defence going to the merits, and be used as an argument, that fraud, duress, gambling or bribery in a contract, are, or are no better than, mere personal privileges, and affect the remedy only as they may be waived or be pleaded and proved, as the defendant pleases.

The weight of reasoning, no less than many of the high authorities before cited, is, in my apprehension, in favor of an insolvent or bankrupt discharge, being considered, in respect to subsequent contracts made under the insolvent system, as if a component part of the obligation. And this view is very much strengthened by the exception before mentioned, and conceded usually on all sides to be correct, that the contract, if made or to be performed elsewhere, is not to be affected by a discharge issued in the state where it is sued. But if the discharge, attached to the remedy or action, and to those only, it would be a good defence to the action. though brought on a contract made or to be performed elsewhere; attaching, however, as it does, to the contract, and that alone, it is properly held, and only in that view, not to affect a contract not made under its jurisdiction or prevalence or not to be fulfilled under and with a view to it. Looking to these discharges in this aspect is, also, the only justification for foreign courts to respect them, as we have already shown that they often do; and though they are said sometimes to do this ex comitate, and not of right, and though to justify either such comity or right, an opportunity and full notice must be enjoyed to prove the debt, (Story, Bills, § 265; Wolff v. Oxholm. 6 Maule & S. 92); yet, in that event. by this comity it is usual; and, by sound principle as to the nature of contracts, it is right to hold, that a discharge of a debt, good by the laws of the place where the contract was made and to be fulfilled. is good every where. This applies in principle as well as practice to discharges under insolvent systems, extending in terms to the debt or contract, as well as to other kinds of discharges. 3 Burge. Col. Law. 876, 925; Story, Confl. Law, §§ 331–335; 2 Kent, Comm. 392; 4 Durn. & E. [Term R.] 182; 5 East, 124; 2 H. Bl. 553; Edwards v. Ronald. 1 Knapp. 259, 265; [Millar v. Hall] 1 Dall. [1 U. S.] 229; [Emory v. Greenough] 3 Dall. [3 U. S.] 369. and other cases before cited. In these. as in others, the parties seem impliedly to agree to this, when executing the contract. The sovereign operation of local laws on all local contracts demands it. "State rights" are feeble without it; and comity between different governments, whether at home or abroad. ought to respect it and give it effect. as widely as they do contracts themselves, they being interwoven with them as if a portion of the res gestæ. a part and parcel of their conditions; and if so, all must admit that they are to be regarded in construing and enforcing them, by all courts who treat contracts on any enlarged system of philosophical jurisprudence.

In this case, then. on principle, independent of precedents, and without reference to two exceptions, which will hereafter be noticed, my conclusions on the general question would be, that the insolvent law of Massachusetts was, in its spirit as well as words, designed to operate upon the debts or contracts formed under it, and not merely upon the remedy on them; and that the state possessed a constitutional right to pass such a law, applying. as this did, only to subsequent contracts, and hence not impairing them, as they are made with a view to it, made under it, and adopt it substantially as a part of their conditions. Bronson v. Kinzie, 1 How. [42 U. S.] 311, 315; McCracken v. Hayward. 2 How. [43 U. S.] 608, 617. That, in answer to several objections to these views, such, for instance, as the supposed existence of the debt for some purposes, after the discharge, it is so only when the proceedings were fraudulent and void, or only in foro conscientiæ at times, but not in the judicial tribunals without a new promise, if the discharge be duly pleaded. Or such, as that some of the insolvent systems use language clearly applying only to the remedy; for then I do not wish to extend that class beyond the remedy, but only those, which, like this under consideration. quite as clearly profess to reach the debt or contract. Or such, as we have seen, arguing that insolvent laws operate only on persons. For. when any of them do so in terms, I would not enlarge their operation against persons not resident in the state passing them. But when. as here. they in terms reach things, or debts themselves, property. it is a mere matter of construction, and. to my mind a very forced construction. to treat them as restricted to persons. So, in other cases. it is argued that the operation of such laws is merely territorial. and consequently cannot operate or be regarded in other courts than those of the state passing them. But most other laws may as well be thus restricted to the territory of the state passing them as these. if we look to their language and their origin; and. where we go beyond those to principle, it is almost universally conceded in other cases, that in questions out of the state. the titles to property within it. real and personal. the conveyances of it by deed and by will. the construction of contracts made and to be performed within it. must all be governed by the laws of the state wherever the parties may reside or the suits be brought.

But, notwithstanding these answers and

considerations against the arguments, which are often urged in favor of creditors living in other states, on the general question, those creditors certainly have some strong claims to success, when coming within either of the two exceptions before mentioned. Both of these exceptions are, in some views, applicable to this case, and will, therefore, be now briefly examined. The first one, which we have seen to be strongly sustained by authority and principle, is, that contracts, to be performed abroad, are not governed by the lex loci contractus, but by the law of the place where they are to be fulfilled; and hence it is argued, that, if in this case the contract was not to be fulfilled in Massachusetts, a discharge under the insolvent system of that state would not be contemplated when it was made, and would not become a part of its essence. The note sued was not made expressly payable in any place. But running as it did, to the promisors themselves, and by them indorsed, it is, as we have before shown, to be treated in law as a note payable to bearer. In this form, in order to sustain jurisdiction over the present suit at all, it is to be considered as a contract directly between the holder and the promisor. When payable to bearer, a note passes by delivery, but the contract is originally to whomsoever may hold and claim it, and the contract is not assigned, it is merely delivered to another. Gibson v. Minet, 1 H. Bl. 569, 606; 3 Burrows, 1516; Bank of Kentucky v. Wister, 2 Pet. [27 U. S.] 326; [Bonnafee v. Williams] 3 How. [44 U. S.] 574–577. In that event, perhaps, the consideration, as between these parties, must be regarded as advanced in New York, and the contract, as one between them, be deemed either made, or finished, or to be performed, there, where the holder resided. In this view it might be open to the same construction it would be if on its face payable in New York. Independent of this reasoning, it has been decided that an advance of money, made by A. for the benefit of B. or his agent at the place where A. resides, must be considered as a contract made to be fulfilled where the advance was made. [Boyle v. Zacharie] 6 Pet. [31 U. S.] 644; [Lanussee v. Barker] 3 Wheat. [16 U. S.] 101, 146; 15 Mass. 427; 3 Johns. Ch. 587. And in 8 Pick. 194, before cited, the court has gone still further, and adjudged, in this state, that a common promissory note, with no place of payment specified on its face, if indorsed to a citizen of another state, must be considered as payable or to be fulfilled where the holder resides.

The other exception is connected with a class of cases and a principle which have not been discussed by the counsel, but which look quite applicable to the facts in this cause. It is, that the actual seizure of the property of a bankrupt in another government or country, before his assignees take possession of it, creates a lien on it in favor of a foreign creditor, which will be sustained. 3 Burge, Col. Law, 923; 2 Kent, Comm. 406; 6 Mass. 378; 14 Mart. [La.] 99; 1 Har. & McH. 236; 2 Har. & McH. 463; 6 Bin. 353; 2 Hay (N. C.) 24; 4 McCord, 519; 13 Mass. 146; 14 Mart. [La.] 93; [Ogden v. Saunders] 12 Wheat. [25 U. S.] 213; 6 Pick. 286; 3 Wend. 538. In the present case, property is attached even before an assignment by a process from the courts of the United States; and it would seem to be within the above principle, not to pass the title to it by an insolvent law of Massachusetts to commissioners, or assignees, when it had been previously taken and secured by a citizen of another state, and in courts not belonging to that state. This court is as different a tribunal from those belonging to Massachusetts alone, as the court of any other state; and a creditor belonging to New York belongs, for most purposes, to a government and jurisdiction as foreign from those of Massachusetts, as if he resided in France or England. It has been held, that if an assignment of all his property is made by an insolvent, having his domicil in another state, it will not pass his property situated in a state not his place of residence, so that a creditor there cannot attach it, if done before the assignment or before possession is taken under it. The Watchman [Case No. 17,251]; Harrison v. Sterry, 5 Cranch [9 U. S.] 289; Dawes v. Head, 3 Pick. 128; 9 Pick. 315; Chevalier v. Lynch, 1 Doug. 170; sed contra, 4 Johns. Ch. 460. In Saunders v. Williams, 5 N. H. 213, and Goodall v. Marshall, 11 N. H. 88, 97, it is considered as established law in the United States that, notwithstanding proceedings in bankruptcy abroad, creditors here may afterwards attach and hold property here. 10 N. H. 264, 265. This has been questioned some by Story and Kent as to principle. Story, Confl. Law, § 409; 4 Johns. Ch. 400. But if there be a contract of sale abroad, or an assignment by law abroad is made of property here, and is in form valid here by law, then on principle the title passes, if completed before an attachment. Sanderson v. Bradford, 10 N. H. 263.

I do not, however, dismiss the bill on the ground of the validity of either of these exceptions, though both are plausible; because, without giving a decisive opinion in favor of either of them, and without being convinced by the reasoning against the operation of insolvent discharges like this, in cases generally of creditors living in other states, I feel compelled to refuse the prayer of the complainant, by force of the decisions in the supreme court of the United States. Those, in cases of this character, it is right as well as decorous for me to conform to, till changed by that court. Let the bill be dismissed.

TOWNER (WALKER v.). See Case No. 17,-089.

---

## TOWN OF.

[NOTE. Cases cited under this title will be found arranged in alphabetical order under the names of the towns; e. g. "Town of Gold Hill v. Caledonia Silver Min. Co. See Gold Hill v. Caledonia Silver Min. Co."]