The case was first argued at February Term, 1858, when the Court of Appeals made the following order:
Wardlaw, J.
In this case the Court orders a re-argument to be had at the next sitting here.
In some measure to direct this re-argument to the points upon which the Court, as now constituted, desires information, the following observations are made:
The plaintiffs took an indefeasible interest under their grandmother’s will, in default of an appointment by their mother. Their mother, in executing the power, misrecited the instrument which created it; but this does not vitiate the execution; the intention to execute the power she had being clear.
The argument, that the mother’s will should not be held to make no change, because, by making a will, she showed that she intended to make some change, is of no avail. She may have intended what the law does not permit, and her intention can (if she desired to make an executory devise after an *541 absolute power of disposition in the first taker, and if that is unlawful,) prevail no more than would the clear intention to limit upon a contingency too remote, or to give an absolute estate not subject to debts. Under the mother’s will the sons took a fee simple. Act of 1824. 1 Term, 414.
If both should marry and have issue, the first limitation would be defeated, and with it would fall the second, which depends upon it. If either should marry or should die testate, the second limitation would be defeated, and a conveyance made by both would bar the rights of the survivor under the first. The doubts arise chiefly under the words “ remain, remaining and intestate.”
Do remain and remaining imply (as Kent says necessarily imply) a power of disposition (of absolute disposition) in the persons or person who Shall leave of their or his moieties or moiety of the mother’s residue, property remaining? May not these words have had reference to negroes that would survive, and things consumable in the .use that would not be consumed?
What power of disposition (is it such absolute power as Kent thinks will in a first taker render an executory devise void?) is implied in the contingency of either dying intestate? 4 Kent, 278. An executory devise after an absolute power of disposition in the first taker is void, “because the limitation is inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will.” Citing Jackson vs. Bull, 10 John. 29; 16 John. 537; 5 Mass. 509; Fitzgibbon, 314. Is this good law? Kent held it in 10 John., maintained it against a vigorous argument in 16 John., and inserted it in his Commentaries, but it has not been found in any English book.
Fearne, cited by Kent in 16 John., says that it is of the essential nature of an executory devise that the estate upon which it is limited should not be subject to destruction or alteration by the first taker. All the cases he cites relate *542 to the bar by way of common recovery, and to this various elementary writers (Woodeson and Smith) seem to understand Eearne as referring.
Jarman and Roper (Jarm. on Wills, ch. 13; Roper on Legacies, ch. 21, p. 56,) collect cases to show that a devise or bequest is made void because of the uncertainty raised by remain, be left, &c. All of these cases are in equity. Most of them relate to personalty, and most of them (all, perhaps, except Att'y Gen. vs. Hall, in Fitzgibbon, and Bull vs. Kingston, 1 Mer. 314,) involved the question whether words in a will were precatory or imperative, whether they raised a trust or suggested a desire.
Land to A. and his heirs, and if he should not dispose of it by conveyance in his lifetime or by will, to B.; is the executory devise void ?
Land to A. and his heirs, and if he should die without a will to B.; is the executory devise void ?
So to A. and his heirs, and if he should not marry; if he should remove from the State; if he should not pay a sum to C.; then to B.; which, if any, is void ?

What I may not in my lifetime dispose of to A., why less uncertain than, to B. what A. may leave unspent?

“ Absolute discretion and free agency ” in the first taker, Kent, 16 John., 590, distinguishes from the discretion to marry. Would the distinction extend to the discretion to make or not make a will ?
Does the first taker, when the estate is to him and his heirs subject to an executory devise, take a freehold or an use ? See Kent, 16 John., and see Walker’s Theory of the Law, ch. 15.
In this case, do the words remain and remaining derive any additional force from the word intestate? If so, how?
What effect, if any, upon the estate of the survivor would come from the first decedent of the two sons leaving a will ?
If no effect during the life of the survivor, would the will at his death dispose of the moiety of the first decedent?
*543 The Court desires earnest attention to the cases and the reasons which may have influence upon the matters of doubt indicated.
The case was re-argued at this Term, and the opinion of the Court was delivered by
Wardlaw, J. Anna C. D. Andrews, by her will, after some specific bequests, gave the residue of her estate to her' two sons, the plaintiffs, to be equally divided between them, and further declared: “But should either of my sons die unmarried and without issue, then whatever may remain of his moiety of my estate, I give and devise to the survivor; but should both of my said sons die unmarried and intestate,” then over to others. We accept as decided, and properly decided, by the late Law Court of Appeals, that plaintiffs, under the will of their grandmother, C. D. Wurdeman, took an indefeasible interest in default of appointment by their mother, and that, under their mother’s will, they took primarily a fee simple. The sufficiency of the limitations over, by way of executory devise, remains to be considered. If the first were the only limitation, there could be no difficulty, for the conveyance of both would bar the contingent right of the survivor. This limitation would also be defeated if both should marry and have issue. And the second limitation would be defeated if either should marry, and die leaving a will.
As to limitations over, the usual and the most important controversy is concerning their remoteness. The policy of the law inhibits the inalienability of estates, and, in consequence, it has been adopted as a rule, that every limitation over must take effect, if at all, from the terms of its creation, within lives in being and twenty-one years and some months afterwards. In the present instance, the limitations over escape this vice of remoteness, for, clearly, the second, dependent on the first, is limited to take effect on contingencies which must happen at the death of the survivor of the sons.
*544 Conceding the lack of remoteness, it is argued for the plaintiffs that the limitations over are void, either for uncertainty or for inconsistency with the absolute power of disposition given to the first takers. In respect to the first limitation, it is said that the words “ whatever may remain of his moiety of my estate,” imply power in the son to use and alien a moiety at discretion, and that it is only the remnant not aliened or exhausted, necessarily uncertain, which the testatrix attempted to limit to the survivor. This view has some support from the cases of Atty. Gen. vs. Hall, Fitzgib. 314; Flanders vs. Clark, 1 Ves. sen. 9; Jackson vs. Bull, 10 John. 18; Jackson vs. Robins, 16 John. 537; Ide vs. Ide, 5 Mass. 509; Bull vs. Kingston, 1 Meri. 318; and Burbank vs. Whitney, 24 Pick. 146; and on the authority of these cases it might be granted that an unspent remnant, where the first taker has power to alien or spend the whole, could not be limited over. It is said to be of the essence of an executory devise, that it cannot be prevented or defeated by the first taker by any alteration of the estate out of which or after which it is limited, or by any mode of conveyance. This is altogether true as to the right of the first taker to bar the executory devise by fine or common recovery; but it is altogether fallacious, if pressed to the conclusion that the executory devise must be independent of the will or action of the owner of the precedent estate. In fact, all executory devises depend, to some extent, on the discretion of the first taker. The most common case of a limitation over in this mode, is on the contingency of the first taker’s dying without issue at his death ; and may he not marry, with the prospect of procreation, or refrain from marriage, at his caprice? So, too, in many other instances, there may be valid executory devises dependent oh the personal action of the primary donee, as that he shall marry with the consent of the executors, shall go to Paris, shall reside in Charleston, and shall not visit Nahant or Newport.
*545 In this case it seems to tis that the testatrix intended to give to each of her sons the use of a moiety of her estate,' and not an absolute power of disposition. Law and good , sense require us to ascertain the intention of the testatrix,! and to effectuate her intention so far as it may lawfully oper-< ate. When she speaks of whatever may remain of a moiety ; of her estate, she may be naturally and reasonably understood? as referring to the remnant in the course of nature, and of the fit use by her son, without implying that she referred to the remnant not aliened or disposed of by her son, with* power to alien the whole — to the remnant 'of articles con-; sumable in the use, and to the survivors of slaves and other sentient chattels. But if she referred to the remnant not disposed of by her son, who had power to dispose of the whole, respectable authority may be found for the validity of the limitation over.
In Beachcroft vs. Broome, 4 T. R. 441, where the devise was to A. and his heirs, but if he die without settling or disposing of the subject, or without issue, then over, Lord Kenyon said: “ If the case turned on the question whether or not this were an estate tail, I should have thought it extremely clear that on failure of the first limitation, the second might have taken effect as an executory devise. In truth, the real question is, what was the intention of the devisor? And if that can be collected from the words of the will, it must be carried into execution, provided it be not contrary to'the rules of law.” These remarks were not necessary to the decision of the issue, but at the least, they are dicta of a judge profoundly acquainted with the doctrines of real estate.
In Stevenson vs. Glover, 1 Man. G. & S., 50 E. C. L. R. 447, A. devised his copyhold and real estates to B., his heirs.and assigns; but if B. should die without issue living at his death, or being without such issue, B. shall not have disposed and parted with his interest in the copyhold estates, then he devised the same to C., and her heirs, and it was held that *546 the limitation over to C. was valid, and took effect on the death of B., without issue and without having parted with his interest, and that B.’s testamentary disposition thereof was inoperative. The case is instructive throughout, but I shall quote only a few passages from the opinions of the judges. “The intention of the testator evidently was to give to his son B., absolute dominion over the.estate, provided he chose to exercise that dominion in his lifetime, but not to leave to him the selection of the object of his bounty by will. The son B. might have prevented the devise over from taking effect, by disposing of the property in his lifetime; but in the event of his not exercising that power, the estate is given over. The testator in the first place gives the estate to his son B., and to his heirs, with full power to dispose of it in his lifetime, but he gives it over provided his son’s wants should not have made it necessary for him to part with it in his lifetime.”
In the second limitation over, no general or unlimited power óf alienation can be implied. The employment of the word intestate, as a condition, may be well interpreted as conferring the power of disposing of the estate by will, but not of disposing of it by deed or otherwise. A power to alien in a particular mode, must be pursued as to the mode, and is ineffectual if exercised differently. Bentham vs. Smith, Chev. Eq. 33. Partial restraint of alienation by the donee may be well imposed by a testator on the object of his bounty. There is nothing to hinder a testator saying to his legatee : you may devise or appoint the land I have given to you, but you shall not convey it by deed. Co. Lit. 223-4; 6 East 173.
It is ordered that the appeal be dismissed.
O’Neall, C. J., and Johnston, J., concurred. v

Motion dismissed.