PHILLIPS *against* MEDBURY.

In 1823, *A.* made his will, by which he gave to his wife *L.* the use and im-
provement of one half of all the real estate he should die seised and pos-
sessed of, until his son *J.* should arrive at the age of twenty-one years,
should she so long remain his widow ; and when his son *J.* should become
twenty-one years of age, then his said wife should have the use and im-
provement of only one third of his real estate, so long as he should remain
his widow ; she to support his two children *P.* and *J.* until they should re-
spectively arrive to the age of twenty-one years. By the same will, the
testator gave to his son *J.* and his heirs and assigns forever, when he should
arrive at the age of twenty-one years, the lands so given to his wife, sub-
ject to the incumbrance of her dower. He then gave all the residue of his
estate, real and personal, to his son *C.*, under the incumbrance of the afore-
said provision for his wife. The testator died soon afterwards, leaving
three sons and four daughters, of whom *P.* and *J.* were minors. *L.*, the
widow, intermarried with *M.*, in *February*, 1827. *J.* died in *September*,
1827, at thirteen years of age. *P.* is still living and a minor. In an ac-
tion of ejectment brought by *C.* against *M.*, to recover the estate so given
to *L.*, it was held, that the limitation of such estate was not void as being
a restraint upon marriage ; the rule declaring such limitations void on this
ground, not being applicable to real estate or to a widow ; and consequently,
that *L.*, by her intermarriage with *M.*, forfeited her right in such estate ;
and *C.*, either as residuary devisee, or as heir at law of *J.* in common with
his brother and sisters, was entitled to recover the whole against one hav-
ing no right.

THIS was an action of ejectment for two parcels of land in
*Plainfield ;* tried, on the general issue, at *Brooklyn, January*
term, 1829, before *Daggett,* J.

The jury returned a special verdict, presenting the following
case. On the 19th of *April* 1823, *Asa Phillips* made his last
will, and soon afterwards died, leaving a widow, three sons,
*Asa, Charles* and *John,* and four daughters, *Mary,* the wife
of *Samuel Dow, Abigail,* the wife of *Caleb Clark, Thirza Clark*
and *Patty Phillips.*

After giving pecuniary legacies to each of his daughters, the
testator proceeded thus : " *Item,* I give and bequeath to my be-
loved wife, *Lois,* one good cow, all my in-door moveables, and
also the use and improvement of one half of all the real estate
I shall die seised and possessed of, together with the use and im-
provement of the whole of that part of the dwelling-house I
now live in, being the *East* half of said dwelling-house, and
the whole of the small barn *South-east* of said house, and half of
the other out-buildings, until my son *John* arrives to the age of
twenty-one years, should she so long remain my widow ; and
when my said son *John* becomes twenty-one years of age, then

my said wife is to have the use and improvement of one third
only of all the real estate I shall die seised of, so long as she
remains my widow ; she to support our two children *Patty* and
*John*, until they each of them arrive at the age of twenty-one
years." The testator then made a devise to *John* in these
words : " *Item*, I give and devise to my son *John*, when he
shall arrive to the age of twenty-one years, the one half of the
home-farm where I now dwell, with the whole of that part of
the dwelling-house I shall die seised of, and the whole of my
flat-rock wood lot, (so called) under the incumbrance of my
widow's thirds, to him and his heirs and assigns forever." He
then made provision for *Charles* as follows : " Lastly, I give,
bequeath and devise to my son *Charles* all the rest and residue
of my real and personal estate, which I shall die seised
and possessed of, under the incumbrance of the afore-
said provision made for my said wife and widow ; to him and
his heirs and assigns forever, on condition that he pay all my
just debts and funeral charges, and the legacies and bequests
aforesaid and the cost of settling my estate."

*Charles* was appointed executor ; the will was proved and
established, in *October* 1824 ; and shortly afterwards, distribu-
tion of the estate was made pursuant to the will. *Lois Phil-
lips*, the widow of the testator, in *February* 1827, intermar-
ried with *David Medbury*, the defendant. *John* died in *Sep-
tember* 1827, being then about thirteen years of age. The
other children are all living ; *Patty*, the youngest daughter, be-
ing a minor, about fifteen years of age. The debts against
the testator's estate have been paid, except only a note for
about 20 dollars, which he signed as surety for his son *Asa*, who
is of ability to pay it ; but the legacies given by his will, have
not been paid ; and no settlement of the estate has been made
at the court of probate.

The action was brought by *Charles Phillips*, in *March* 1828,
for the lands devised in one clause of the will, to *Lois*, and in
another, to *John*. At the commencement of the suit, the de-
fendant was in possession of the premises, which he had re-
fused to surrender to the plaintiff, on a demand thereof previ-
ously made.

The questions of law, submitted, by the special verdict, to
the court, were, whether the plaintiff was entitled to recover
the whole, or one sixth or no part whatever, of the demanded
premises. Previous to any decision, the case was reserved for

*Windham,*
July, 1829.

Phillips
*v.*
Medbury.

the advice of this Court as to what judgment should be rendered upon the verdict.

*H. Strong* and *Frost,* for the plaintiff, contended, 1. That by the terms of the will, the estate of *Lois* was forfeited, by her intermarriage with the defendant ; and the plaintiff is entitled to the whole estate as residuary devisee. The testator made her a reasonable proposition in the alternative, leaving it perfectly optional with her to take that alternative which she preferred. She might reject the provision made by the will, if she disliked the condition attached to it, and claim her dower. There can be no doubt as to the intention of the testator. He surely did not intend, that she should have the estate any longer than while she remained his widow. The court, then, will give effect to such intention, if it may consistently with the rules of law.

The objection is, that the restriction is void as opposed to sound policy.

In the first place, a devise to *a widow,* subject to a restraint on her future marriage, will be forfeited, if she marry. The law allows a man to place this guard about his children to prevent their going into the hands of a stranger for education. *Godolph. Orph. Leg.* 45. *Reeve's Dom. Rel.* 222. *Scott* v. *Tyler,* 2 *Bro. Ch. Rep.* 488. 2 *Cruise's Dig.* 32, 3.

Secondly, a condition in a will in restraint of marriage is good, if there be *a devise over.* *Creagh* & ux. v. *Wilson* & al. 2 *Vern.* 572. *Amos* v. *Horner,* 1 *Eq. Ca. Abr.* 112. *Scott* v. *Tyler,* 2 *Bro. Ch. Rep.* 431. *Swinb.* 481. (*Lond. ed.* 1803.) A devise over can evidently make no difference except only as it is *evidence of intention.* *Willes' Rep.* 96. A devise over of the *general residue* is sufficient for this purpose.

Thirdly, the doctrine that a condition in restraint of marriage is void, is not applicable to *a devise of land.* The rule relied upon, is derived from the *civil* law, which related only to *legacies.* It certainly has not been *extended,* by the common law of *England,* or by the chancery decisions of that country or of this. *Harvey* & al. v. *Aston* & al. *Com. Rep.* 726. S. C. 1 *Atk.* 361. 375. 379. 380. S. C. *Willes' Rep.* 83. *Pulling* v. *Reddy,* 1 *Wils.* 21. *Swinb.* 488. note by *Powell.* 2 *P. Wms.* 628. note by *Cox.*

2. That if the plaintiff was not entitled to recover the whole estate as devisee of the *residuum,* he was clearly entitled to one sixth part, as one of the six heirs of *John.*

*Goddard,* for the defendant, after premising, that *Lois* could not be deprived of her interest in this estate under the will, except by a condition subsequent; and that a condition subsequent, which divests an estate, is *not favoured* generally; contended, 1. That a condition in restraint of marriage generally, unless there is a devise over *immediately,* is void. This is a rule of policy, involving the best interests of society, not of a local or temporary nature. It was a rule of the civil law, and has been incorporated into the jurisprudence of *England* and of this country. That marriage should be left free, is at least as important here, as in *England* or *Rome. Gulliver* d. *Corrie* v. *Ashby* & al. 4 *Burr.* 1938. *Long* v. *Dennis,* 4 *Burr.* 2055. *Lowe* v. *Peers,* 4 *Burr.* 2225. *Doe* v. *Freeman* & ux. 1 *Term Rep.* 389. *Parsons* & ux. v. *Winslow,* 6 *Mass. Rep.* 169. 1 *Swift's Dig.* 141. In *Doe* v. *Freeman* & ux. *Ashhurst,* J. states the law on this subject thus : " It is a settled principle, that limitations in restraint of marriage, are not to be favoured. Wherever an estate is given to a widow for life, provided she shall not marry, unless there be a devise over *immediately,* it is merely *in terrorem.*" 1 *Term Rep.* 392, 3.

First, the devise over within the rule, must be *an express devise over :* the devise of a general *residuum* will not answer the purpose. *Wheeler* v. *Bingham,* 3 *Atk.* 364. S. C. 1 *Wils.* 135. 137, 8. *Garrett* & ux. v. *Pritty* & al. 2 *Vern.* 293. *Parsons* & ux. v. *Winslow,* 6 *Mass. Rep.* 180.

Secondly, the devise over must be *immediate,* so as to take effect *at the time of the marriage.* This proposition is supported by the same authorities, particularly *Doe* v. *Freeman* & ux. 1 *Term Rep.* 389. 392, 3. and *Parsons* & ux. v. *Winslow,* 6 *Mass. Rep.* 180, 1. But by the provisions of the present will, it is clear, that the estate was not to go immediately to *Charles,* on the marriage of the widow, provided *John* should then be living; and it is a part of the case, that the marriage took place several months before the death of *John.*

Thirdly, the rule is equally applicable to *real* and *personal* estate. The general terms in which the rule is laid down, and the reasons on which it is founded, concur in establishing this position. See the observations of Lord *Mansfield* in *Long* v. *Dennis,* 4 *Burr.* 2055, 6. and the authorities before cited.

Fourthly, if the rule is restricted to personal estate, it is still not inapplicable to this case; for as the estate was given to the widow in trust to support *Patty* and *John* until they should

respectively arrive to the age of twenty-one years, she had but a chattel interest. *Daley* & ux. v. *Desbouverie* & al. 2 *Atk.* 261. 265. *Goodtitle* d. *Hayward* v. *Whitby,* 1 *Burr.* 228. 230.

2. That if these positions cannot be sustained, *Lois* had no estate whatever in the demanded premises, but a personal trust or confidence ; and the estate was vested in *John,* to be enjoyed by him, when he should arrive to the age of twenty-one years ; and consequently, it was not the subject of forfeiture by her, on her marriage. *Everts* v. *Chittendon,* 2 *Day* 338.

3. That the plaintiff cannot recover under the will, because he has not complied with the condition, by paying the debts and legacies. He has paid none of the legacies, and not all of the debts.

4. That if *Lois* had an estate, which she could and did forfeit, by the marriage, still as *John* lived beyond the marriage, he took the estate under the will, and the plaintiff can recover only one sixth part as the heir of *John.*

DAGGETT, J.    *Charles Phillips,* the plaintiff, claims the demanded premises, as residuary devisee under the will. He also insists, that as heir at law to his brother *John,* he is entitled to one sixth of the lands demanded, if not under the residuary devise.

The defendant urges, that the plaintiff cannot recover under the will, because he has not complied with the condition, by paying the debts, legacies, &c. ; and also, that no part of the estate devised to *John* passed under the will of the father, but was vested in *John,* to be by him *enjoyed,* when he arrived at the age of twenty-one years.

In my judgment, it is not *necessary* nor *proper* to decide either of those points last suggested. It is not *necessary,* because if the widow, by her intermarriage, forfeited all right to the land in question, then the plaintiff is entitled to judgment on this special verdict for the whole ; for she is a stranger, and her husband, the defendant, also ; and the plaintiff at least is entitled, as heir at law, to one sixth, as tenant in common with his brother and sisters. This being his condition, he can recover the whole against one who has no right ; and the recovery shall enure to the benefit of himself and his co-tenants. This is the doctrine of our courts. *Barrett* & ux. v. *French,* 1 *Conn. Rep.* 354.

It is also improper to decide, whether the plaintiff can recover under the residuary devise, because that might affect his brothers and sisters, who are not parties to this record, so that a decision would not bind them.

The only question, then, now to decide, is, whether all the right of the widow under this devise, is gone, by her intermarriage.

If the intention of the testator is to govern, there can be no doubt. That intention is very clearly manifested. *One half* the real estate mentioned is given to her until *John* arrives at the age of twenty-one years, " *should she so long remain my widow ;*" then and after that, she is to have the use and improvement of only *one third* " *so long as she remains my widow.*" The limitation is repeated in explicit language, to the end that there might remain no doubt of his intention. It also appears, that he had, by the same clause of the will, given to her, absolutely, one cow and all his *in-door moveables.* The option, then, of taking under the will, subject to a limitation that she should not marry, or if declining to accept the provision made by the will agreeable to the 4th section of the statute, (*p.* 181. *tit.* 26.) and be at liberty to marry, was fairly presented to her. She chose the first alternative. Why should she not be bound by it ?

It is, however, insisted by the counsel for the defendant, that limitations of this kind, when introduced into a will, are merely *in terrorem*, and shall not work a forfeiture of the estate devised. They are also compared to bonds given not to marry, which are always void on the ground of public policy. A bond not to marry, or not to marry any one except the obligee, is doubtless void. Marriage should be free ; should proceed from choice, not from compulsion. This is a salutary rule of the common law. *Lowe* v. *Peers*, 4 *Burr.* 2225. Hence, also, all marriage-brokage contracts are discountenanced. But declaring restraints upon marriages in wills void, as made *in terrorem*, is another and different doctrine. It is not a doctrine of the common law, but introduced into the court of chancery in *England* from the canon law. As that court is considered as possessing the power over legacies, it has adopted the rule of the canon law to a certain extent. It has declared, for example, in many cases where the devisor has imposed an unreasonable restraint upon a young male or female, and annexed it to a devise, that it should be deemed

*Windham,*
*July, 1829.*

*Phillips*
*v.*
*Medbury.*

*in terrorem ;* and therefore, that the devise should, notwithstanding, take effect.    But in all these cases, it is admitted, that this power is not given by the common law ; nor is it ever exercised in relation to real estate, but only as to personal estate, which is, in the case of legacies, subject to the controul of a court of chancery.   Nor is it applied to a widow.   It would seem very reasonable, that a man leaving a widow with seven children, as is the present case, should be permitted to encourage her, by suitable provision in his will, to remain single, and not subject his own offspring to the probable evils of a step-father, to waste her substance, and thereby render her less able to support and educate them.   Indeed, it entirely accords with reason, as it appears to me, that she should have an option to take such provision, and remain unmarried, or refuse it, and be thrown upon the general provision of law,—her dower.   Nor have I been able to find any case, or any *dictum* of any judge or chancellor, in opposition to these principles.   In *Amos* v. *Horner,* 1 *Eq. Ca. Abr.* 112. and in *Scott* v. *Tyler,* 2 *Bro. Chan. Rep.* 487, 8. they are expressly recognized.   In the latter case, Lord *Thurlow,* after a very elaborate discussion, by very able counsel, in which all the cases are examined, declares the result to be, that " a condition that a widow shall not marry, is not unlawful.   An annuity during widowhood,—a condition to marry or not to marry *Titius,* is good."

I am satisfied, therefore, that *Lois Phillips,* by her intermarriage with the defendant, lost all her right in the land devised ; and that the superior court be advised, that judgment be given for the plaintiff to recover the whole of the demanded premises.

The other Judges were of the same opinion.

Judgment to be given for the plaintiff,
for the whole of the demanded
premises.