MARY A. MOSELEY & others *vs.* PERCY G. BOLSTER & another, executors.

Suffolk.    December 1, 2, 1908. — February 25, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Equity Pleading and Practice,* Demurrer.  *Equity Jurisdiction,* For a partition, For an accounting, Laches, Statute of limitations.  *Partition.  Devise and Legacy,* What estate.  *Joint Tenants and Tenants in Common.  Limitations, Statute of. Words,* "Desire."

While it is true that a demurrer to a bill in equity which seeks only a partition of real estate between tenants in common will be sustained, nevertheless if the bill contains also allegations showing that the defendant for many years has received on behalf of himself and the plaintiff the rents and profits of the common estate, that the accounts in regard thereto are complicated, and that the proportions in which a division of the estate and of its proceeds should be made are to be determined by the construction of a clause of doubtful meaning in a will of a former owner thereof, the bill may be maintained.

Where the plaintiff and the defendant in a suit in equity begun in December, 1901, are tenants in common of certain real estate, which was devised to them by a testator who died in 1887, and the plaintiff is seeking an accounting from the defendant, who has managed the real estate, if it appears that divisions had been made between the parties *pro tanto,* and that so late as October, 1900, it was agreed between them to correct any inequality which existed in a partial division of real estate that then was made upon any future divisions being made in the lifetime of one of them, the plaintiff is not barred from maintaining the bill either by his own laches or by the statute of limitations, R. L. c. 202, § 6.

The residuary clause in the will of one who at the time of his death owned much personal property of various descriptions and a number of parcels of improved real estate read as follows: "All the rest and residue of my estate in whatsoever it may consist and wheresoever situated, I give bequeath and devise to my son O. and my daughters P. and M. as follows to my son O. one undivided half part and I desire that my real estate in Needham County of Norfolk & Commonwealth of Massachusetts shall be held by my son O. in the division of my estate, together with the farm stock utensils and other personal property on said estate in Needham, to my said daughter P. one undivided quarter part and to my daughter M. one undivided quarter part." *Held,* that such expression of the testator's "desire" was an operative disposition of his property, and that the clause must be interpreted as giving to the son O. the Needham property and to the three children as tenants in common the rest of the property in such proportions that, taking into account the value of the Needham property, the son's total share of the estate would be one half and the share of each of the daughters would be one fourth of the whole.

Where, by the provisions of a will, a son of the testator received certain specified real estate, and the residue of the real and personal property of the testator is to be divided among the son and two daughters in such proportions that, taking

into account the value of the specified real estate devised to the son, the son will receive one half of the whole and each of the daughters one quarter, and on the father's death the son at once enters into enjoyment of the specified real estate and receives all the income thereof and profits therefrom, the income from all the rest of the estate should be divided in the same proportions as the principal should be; and, in a suit in equity between the parties for an accounting, during the pendency of which a receiver has been in charge of the common property and has been receiving the rents and profits therefrom, if it is found that the son should receive of the estate other than the specified real estate a proportion which is represented by the decimal .4587, and each of the daughters a proportion represented by the decimal .27065, but that, in divisions of the income and profits made by the parties *pro tanto,* the son has received one half and each of the daughters one quarter, the error thus made may be corrected by a proper application of funds in the hands of the receiver as income.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 5, 1901, alleging that Martha A. Perry,* the plaintiff Mary A. Moseley and the original defendant Oliver H. Perry were the beneficiaries under the residuary clause of the will of Augustus B. Perry, late of Boston, who died in 1887; that the will provided (the quotation is from the words of the bill, the words of the will being stated in the opinion) that "all the residue of the property of said Augustus B. Perry was left one half to the defendant, Oliver H. Perry, one fourth to said Mary A. Moseley and one fourth to said Martha A. Perry, with the further provision that said defendant, Oliver H. Perry, should have as part of his one half the real estate of said Augustus B. Perry in Needham, together with the farm stock, utensils, and other personal property on said estate"; that the clauses preceding the residuary clause contained a devise and bequest of one parcel of real estate to the widow for her life and several bequests of money; "that substantially all the personal property left by the testator had been distributed in accordance with the provisions of said will: one half to the defendant, Oliver H. Perry, one quarter to said Mary A. Moseley, and one quarter to said Martha A. Perry. The said defendant took the personal property at Needham as part of his one half part"; that no division ever had been made of the real estate; that the real estate in Needham had been taken by the city of Newton under statutory authority for the purposes of its water supply;

---

* The interests of Martha A. Perry, who had died, were represented by the executors of her will.

that a petition for the assessment of damages resulting therefrom had been filed in the names of the defendant and the plaintiffs, but that the amount received from final judgment in the suit, $16,096.66, had been paid to the defendant who never had accounted for it; that in 1889 a sale of a parcel of the real estate and a division of the proceeds had been made by giving to the defendant one half thereof and to each of the other two beneficiaries one quarter; that in 1900 an exchange of interests in two others of the parcels was made between the defendant on the one hand and the other two beneficiaries on the other, and that an agreement in writing then was made to the effect that, the value of such two parcels being unequal, such inequality should be taken into consideration in the adjustment of future divisions; that a parcel of real estate in Lynn had been accepted in the name of the defendant in payment of rent due from a tenant of a parcel of the common property in Lynn; * that the real estate left by the testator was improved real estate, chiefly in Boston, and was let to numerous tenants; that since the death of the testator the real estate, except that in Needham, had been managed by the defendant and John G. Moseley, one of the plaintiffs, under a firm name; that there had been divisions of net proceeds therefrom from time to time, and that the accounts were complicated.

The thirteenth and fourteenth paragraphs of the bill were as follows:

" 13. The plaintiffs are now desirous of having their shares in the real estate described . . . set off to them as tenants in common, and separated from the share of the defendant, Oliver H. Perry.

" 14. In making said partition, in order to determine the proportions in which said parties are entitled to share, it is necessary to take into account the value of the real estate in Needham, the proceeds of which were taken by said Oliver H. Perry, and also the value of the real estate . . . [which the parties had exchanged interests in] . . . none of which last-described three parcels of real estate are now held by the tenants in common."

* This is the parcel referred to in the next to the last paragraph of the opinion.

The prayers of the bill were for a receiver of the rents and profits, that the proper basis of division of the proceeds of the real estate exchanged and of the Needham real estate be determined, and that an account be taken " of the rents received and collected by the defendant." The fifth prayer of the bill was as follows: " 5. That a partition may be made of all of said real estate in accordance with the true interests of the parties as ascertained by this court, and that the defendant may be required to execute and deliver such conveyances as may be necessary to carry out said partition; and the plaintiffs hereby offer to make such conveyances on their part as may be required to carry out the terms of said partition."

During the pendency of the suit, the defendant died, and the executors and trustees under his will were admitted as parties to defend in his stead.

The defendants demurred on the ground among others that the court had no jurisdiction to decree a partition of real estate as prayed for in the bill. The demurrer was heard by *Hammond, J.,* who overruled it; and the defendants appealed.

The case was referred to a master, who filed a detailed report, which in part read as follows:

" It is contended for the defendants that A. B. Perry's will created a cotenancy, an estate in common in his three children, in the proportions named to all the residue, including the Needham farm, with the superadded right in O. H. Perry in the nature of an executory devise to take the farm whenever a partition should be had; that O. H. Perry having held the farm and taken the proceeds of it, with the claim of title thereto, his sisters' claim against him on this account has been barred by the statute of limitations, and that the division of the undivided residue should be made in the proportions of one half and two quarters, without taking that into account; that if by the will O. H. Perry took an estate in severalty in the Needham farm he took it as a specific devise and is entitled to one half the remainder in addition, and that the fact that these proportions have been observed in the divisions heretofore made shows that it was so understood by the parties.

" I find that by the will O. H. Perry took in severalty the Needham farm by specific devise as a part of his share (i. e., one

half) of the residue given to him and his sisters in common, and
that it was to be counted as such in the division of the property
when the same should be made. So far as it is material I find
the acts of the parties, either as to the disposition of the farm or
as to the partial divisions that have been made, are not incon-
sistent with this construction of the will. I find that the divisions
made between the parties were understood to be only *pro tanto*
divisions, and that it was understood between them that a final
distribution, a division of the estate, was to be made at some
future time. . . .

"In determining the interests of the parties in the remaining
residuary estate it is necessary to determine the value of A. B.
Perry's estate at the date of his death and the value of the Need-
ham farm at that date. O. H. Perry was entitled to one half
the whole residue. He received the Needham farm and personal
property thereon as a part of that one half. His interest in the
remainder of the residue, i. e., after taking out the value of the
farm and the personal property thereon, is found in the propor-
tion which one half the total value of the estate, less the value
of the farm and personal property thereon, bears to such
remainder.

"I find the value of the farm at the date of A. B. Perry's
death to have been $10,000. From one half the value of A. B.
Perry's estate should be deducted the value of the farm and the
personal property thereon, and the result should be divided by
the whole value less the value of such farm and personal prop-
erty. The estate of O. H. Perry is entitled to this proportion
of the present estate and its increment, less what he has already
received in the divisions above set forth. The plaintiffs are
entitled to the rest. . . .

"In the manner above set forth I determine the interest of the
parties in the remaining residuary estate as follows:

| | | |
|---|---:|---:|
| Value of residue of A. B. Perry's estate at his death.    .   .   . | | $177,280 65 |
| Value of farm  .   .   .   .   . | $10,000 00 | |
| "   " stock, tools, etc.  .   .   . | 3,511 52 | |
| | $13,511 52 | 13,511 52 |
| | | $163,769 13 |

O. H. Perry's one half of A. B. Perry's  
   estate without income . . . $88,640 32  
Less farm and stock . . . . 13,511 52  
                                    $75,128 80      75,128 80  
                                                  $88,640 33  

O. H. Perry's share of balance of  
   residue . . . . . . $\dfrac{75,128\ 80}{163,769\ 13}=.4587$ of the real estate and personal property.  

Interest of O. H. Perry in real estate     .4587    -  
Interest of M. A. P. and M. A. M. in  
   real estate . . . . . .    .5413 "

The defendants filed various exceptions to the report, and it was recommitted to the master, among other purposes, in order that he might " state to the court what would be the rights and interests of the parties in the remaining residuary estate, if the proper construction of the residuary clause of Augustus B. Perry's will was that it constituted a devise of the residue to Oliver H. Perry, Mary A. Moseley, and Martha A. Perry as tenants in common, with a right in Oliver H. Perry to take the farm in the division of said residue."

The master accordingly filed a supplemental report containing the following: " Oliver H. Perry was in occupation of the [Needham] farm, engaged there with his father in the business of raising hogs, at the date of his father's death, and he continued in occupation, carrying on said business, up to the time when the farm was taken by the city of Newton for the protection of its water supply, on or about December 17, 1889, . . . No deed or release of the farm to Oliver H. Perry has been given. Oliver H. Perry paid no rent for the farm and was charged with none, there being no evidence of anything having been said about rent. Oliver H. Perry made no account of rents or profits, and improved the farm considerably at his own expense. The amount of the judgment for the taking was paid to him, he has never accounted to his sisters for the proceeds, and, when asked by Moseley for an accounting, claimed the farm belonged to him.

I conclude, upon all the facts, that Oliver H. Perry, having treated the farm as his own since his father's death and having taken the proceeds upon its conversion into personalty by the taking of the city, cannot now be heard in equity to deny that he exercised his right and elected to take the farm from the date of his father's death. If he is to be regarded as having taken the farm from the date of his father's death, the rights of the parties in the remaining residuary estate would be the same as stated in my previous report.

"If, however, upon the construction of the will which I am directed to assume herein, O. H. Perry cannot thus be treated in a determination in equity of the rights of the parties in the undistributed residue as having taken the farm from the date of his father's death, but it must be held that the tenancy in common continued with one tenant in possession, in strict accordance with the legal title, until the taking by the city of Newton and his retention of the proceeds, the value of the farm at the date of the taking must be determined, O. H. Perry charged with that, and, there being no evidence of any profits having been made from the farm, nor anything said about rent, the rents should be divided in the proportion of one half to him and one fourth to each of his sisters up to that date. I find the value of the farm at the date of the taking to have been $13 757.83 the amount determined by the jury.

"Upon this view of the case the rights of the parties in the undistributed residue are to be computed as follows:

| | |
|---|---:|
| Value of A. B. Perry's estate at the date of his death . . . . . . | $177,280 65 |
| Total amount of property divided previous to December 17, 1889, the date of the taking . . . . . . . | 60,405 82 |
| | $116,874 83 |
| To this should be added amount of increase in value of farm over amount found as value at date of death . . . . | 3,757 83 |
| Value of estate remaining undivided at date of taking . . . . . . | $120,632 66 |

| | |
|---|---|
| O. H. Perry's one half of this = . . . | $60,316 33 |
| By his taking the farm at that date, valued at | 13,757 83 |
| It left the balance to which he was entitled as . . . . . . . . | $46,558 50 |
| The value of the entire estate undivided at this time, the farm having been taken out | $106,874 83 |
| O. H. Perry's share of the residue is therefore . . . . . . . | $\dfrac{46,558\ 50}{106,874\ 83} = .4356$ " |

Exceptions by the defendants to the original and supplemental reports of the master were heard by *Morton*, J., who sustained them and made findings and ordered a decree at variance with the conclusions reached by the master in his original report, and at the request of the parties reported the case to the full court, annexing to the report a form of decree which was in accordance with the conclusions of the master stated in his original report, and which was to be entered in case all of the contentions of the plaintiffs were sustained.

*W. L. Putnam & J. L. Putnam*, for the plaintiffs.

*P. G. Bolster*, for the defendants.

SHELDON, J. 1. The defendants' demurrer was rightly overruled. It is true that a partition of the real estate left by Augustus B. Perry cannot be made in this proceeding in equity. *Husband* v. *Aldrich*, 135 Mass. 317. But the bill can be maintained to determine the rights of the parties and to state the account between them and to obtain for the plaintiffs that part of the personal property to which they are now entitled. *Holmes* v. *Holmes*, 194 Mass. 552, 556. And because there has been in reality an open running account between these parties, and it has been understood between them that the divisions made were only *pro tanto* and that a final division or distribution was to be made in the future, the plaintiffs' remedy is not barred by laches on their part or by the statute of limitations. R. L. c. 202, § 6. The evidence on which the master's finding of this fact was based is not reported; the terms of the agreement made between the parties on October 16, 1900, by which they agreed to correct any inequality in a partial division of the real estate upon a future division being made in the lifetime of one of them, are not

inconsistent with the understanding which the master has found, but rather are favorable to his finding ; and we cannot say that he has reported all the facts upon which he based the finding, so as to enable us to determine whether it was warranted, as in *Fleming* v. *Cohen*, 186 Mass. 323, 325.

2. The principal question to be considered arises upon the residuary clause in the will of Augustus B. Perry. That clause is as follows: " All the rest and residue of my estate in whatsoever it may consist and wheresoever situated, I give bequeath and devise to my son Oliver H Perry and my daughters Martha Ann Perry and Mary Augusta Moseley wife of John G Moseley of said Boston as follows to my son Oliver H one undivided half part and I desire that my real estate in Needham County of Norfolk & Commonwealth of Massachusetts shall be held by my son Oliver in the division of my estate, together with the farm stock utensils and other personal property on said estate in Needham, to my said daughter Martha Ann one undivided quarter part and to my daughter Mary Augusta one undivided quarter part."

The apparent uncertainty in this clause seems to the majority of the court to arise from the attempt of the testator to combine in it two different dispositions of that part of his estate which he had not disposed of by the previous clauses of his will. He intended that it should be taken by his children as tenants in common, in the proportions of one undivided half part to his son and one undivided fourth part to each of his two daughters. But he also intended that his son should take specifically his real estate in Needham, with the farm stock and other personal property thereon, but that this property should constitute a part of the son's undivided one half share in all of the residue of the testator's estate. It was not simply a provision that if and when a division of the whole residue should be made the son should take this property as a part of his share ; the testator did not know and no one could foretell whether such a division would be made. It was rather a specific devise carved out of the residue, to be taken and held by the son in any event. The expression of the testator's " desire " that this property should be held by his son was not the mere expression of a hope that the beneficiaries of his will would use his bounty in a certain manner ; it was an opera-

tive disposition of his property. *Cary* v. *Cary*, 2 Sch. & Lef. 172, 189. *Wood* v. *Camden Safe Deposit & Trust Co.* 17 Stew. 460. *Taylor* v. *Martin*, 8 Atl. Rep. 920. *Oyster* v. *Knell*, 137 Penn. St. 448. This special provision for the son is not to be treated as merely a direction for the occupancy until a division should be made, or as to the manner of making a division, as sometimes has been found to have been intended by testator. *Walker* v. *Dewing*, 8 Pick. 520. *Dallagher* v. *Dallagher*, 171 Mass. 503. *Griswold* v. *Johnson*, 5 Conn. 363. The interests of all the children under this clause must be treated as vesting at the same time, at the death of the testator. *Brown* v. *Bailey*, 1 Met. 254. Full effect can be given to the intent of the testator by treating this disposition of a part of the residue in favor of the son as a partial division made by the testator of the undivided estate which he gave to all his children. *Brasher* v. *Marsh*, 15 Ohio St. 103.

But the general intent of the testator that his son should take only one half part of the residue including the Needham property and that each of his daughters should have a full one fourth part thereof is not to be frustrated. It is true, as we have already said, that the interests of each of the children became vested at the death of the testator, that they took as tenants in common in everything except the Needham property, and that the interests which they respectively took at that time as tenants in common (although subject as to a part of the property to the provision for the benefit of their mother) could not among themselves be uncertain or subject to variation except by their own acts. *Marlborough* v. *Godolphin*, 2 Ves. Sen. 61, 74. The general intent of the testator that all the residue should be held by them in the proportions already stated is perfectly evident, and is not to be defeated by the effect of other dispositions in the will, if effect can be given to them altogether. *Shattuck* v. *Balcom*, 170 Mass. 245, 251. *Barrett* v. *Marsh*, 126 Mass. 213, 216. *Williams* v. *Bradley*, 3 Allen, 270. Such effect can be given consistently with all the rules of law by treating this clause of the will as giving to the son the Needham property and to the three children as tenants in common the rest of the property in such proportions that, taking into account the value of the Needham property, the son's share shall be one half and the share of each

of the daughters shall be one fourth of the whole. We see no
other way of giving effect to all the provisions of the will; and
accordingly we are of opinion that this must be the construction
adopted.

3. The effect of this construction, upon the facts found by the
master, is that the son became entitled upon the death of his
father to .4587, or four thousand, five hundred and eighty-seven
ten thousandths, of the residuary estate of his father outside the
Needham property, and each of the daughters became entitled to
.27065, or twenty-seven thousand and sixty-five one hundred
thousandths thereof. The son having entered upon the Need-
ham property and enjoyed whatever its rents and profits were,
the income from the other property real and personal of the
estate belonged to the children in the same proportions as the
principal, and the sum in the hands of the receiver should now
be applied so as to correct the error committed in the partial di-
visions of the income which have been made. *Rogers* v. *Ross*,
4 Johns. Ch. 388. *Minot* v. *Purrington*, 190 Mass. 336, 342.
These divisions upon the findings of the master are open to cor-
rection, and such correction should be made.

The cases which hold that tenants in common are not liable to
account to each other for rents or profits by reason merely of
their occupation of the whole or of parts of the undivided estate
have no application to this case, and need not be considered.

It is not necessary to discuss in detail all of the defendants' ex-
ceptions to the master's report, although they have all been con-
sidered and examined. We do not find that any of them should
be sustained.

It is not disputed that the rights of the parties to the real es-
tate in Lynn, which was taken in part payment of a debt, are in
equity the same as if it were personal property.

The parties have filed a stipulation as to the rents of the real
estate for the year 1907, and for the correction of some clerical
errors in the master's report. But upon the terms of the report
the decree contended for by the plaintiffs, of which a copy was
annexed to the report, should be entered, subject to any modifi-
cation of its figures by reason of further receipts of rents or ex-
penses incurred in the receivership; and, although the stipulation
is not perhaps perfectly clear in this respect, we do not under-

stand that it requires any variation in the decree. Accordingly that decree will be entered, subject to modification as already stated.

*So ordered.*