ALIDA J. CUMMING, EXECUTRIX, (ESTATE OF THOMAS CUMMING) *vs.* ALIDA ESTELLE PENDLETON ET ALS.

Third Judicial District, Bridgeport, October Term, 1930.

MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 5th, 1930—decided January 27th, 1931.

*Nehemiah Candee,* for the plaintiff.

*John T. Dwyer,* for the defendant Alida J. Cumming.

*Raymond E. Hackett,* for the defendants Alida Estelle Pendleton *et als.*

HAINES, J.   Upon the death of Thomas Cumming on May 15th, 1904, he left surviving him a widow Alida J. Cumming, and as his heirs at law, two minor children, Alida Estelle Cumming (now Alida Estelle Pendleton), and Thomas William Cumming.   By his will dated February 3d, 1904, and probated June 4th, 1904, he named his wife Alida J. Cumming as executrix, and disposed of all his property both real and personal which was of an appraised value of $19,130.34, exclusive of certain real estate in Florida.   Late in 1915 the Florida property was sold and the widow and the two children joined in the deed of conveyance and mutually agreed upon a division of the proceeds of the sale.   It further appears that the executrix made an application to the Court of Probate for the ascertainment of the heirs and distributees of the estate, but no order of distribution appears in the files of that court. There does appear, however, a bond, Exhibit D, signed by Alida J. Cumming and Harry C. Frost, with certain recitals therein.   The widow contends that the terms of the sale of the Florida real estate and the division of the proceeds, as well as the recitals of the bond, are outside the scope of the questions now before us as to the proper interpretation of the will, and should not be considered by us in reaching our conclusions, while the children say they are proper matters for us to consider.

The will of Thomas Cumming is short, consisting of

but three paragraphs, the first in the usual form providing for the payment of debts and funeral expenses and the expense of the settlement of the estate, and the second and third paragraphs reading as follows:

"Second. All the rest, residue and remainder of my estate, both real and personal wheresoever, and whatsoever the same may be, I give, devise and bequeath to my wife Alida J. Cumming.

"Third. If my wife, Alida J. Cumming should remarry, it is my desire that my estate be divided equally share and share alike between her and my daughter, Alida Estelle, and my son, Thomas William.

"I hereby nominate, constitute and appoint my said wife, Alida J. Cumming, the Executrix of this my will. . . ."

Upon this state of facts, eight questions are asked of us, the first two being as to whether the facts concerning the disposition of the Florida real estate and the recitals in the bond are admissible in evidence in connection with the questions relating to the construction of the will. The remaining six, in different forms, ask in effect the determination of the respective rights and interests of each of the parties under the two provisions of the will which we have quoted.

The facts to which the first two questions relate, have been stipulated by the parties and are before us for our consideration. The substantive rights of the parties are, however, to be determined without a trial, and the question whether these facts would be admissible in evidence, is neither necessary nor proper in this proceeding.

The bond, Exhibit D, recites that the widow Alida J. Cumming, "has been given control of the entire estate of the said Thomas Cumming until she shall remarry and in the event of her remarriage that said estate shall be divided equally" between her and the two minor

children. It further recites that she was thus given control "by the terms of distribution of the estate . . . in the Probate Court of the District of Greenwich." The condition of the bond, which contains the agreement is based upon this recital, and requires she shall keep the estate intact so long as she remains the widow of Thomas Cumming, and in the event of her remarriage, shall deliver to said minor children, their proper share in said estate. Turning to the agreed statement of facts we find that "no order of distribution appears in the files and records of said court." Whatever the explanation of this seeming contradiction, it is apparent that the parties were endeavoring by this bond, to follow a construction of the will which they at least thought had been put upon it by the Court of Probate. Certainly it is not in terms their own interpretation voluntarily agreed upon.

As to the facts regarding the Florida real estate and its sale and the disposition of the proceeds: As these are stated in paragraph eleven of the stipulation, it appears that the property was sold in 1925 for $55,000 and the widow and children joined in the deed of conveyance, and that "no judicial construction of said will having been made in Florida" they "agreed upon a division of the proceeds of said sale among themselves." We do not look upon this as necessarily indicating the views of the parties as to the proper legal construction of the terms of the will. So far as appears, the division among themselves was without any reference whatsoever to the provisions of the will; and further, it does not appear what the terms of the division were. Even were any of these facts indicative of the understanding of the parties as to the meaning of the will, it would not be competent evidence of the testator's intent in using the language he did, nor of *his* understanding of its meaning. *Clark* v. *Baker*, 91

Conn. 663, 667, 101 Atl. 9. We conclude that neither the bond nor the Florida transaction has any relevant value in our inquiry and we exclude them from further consideration.

Examining the language of the will itself, it is at once apparent that the residuary clause standing alone, is sufficient to give the widow an absolute estate in the entire residuary fund, though it does not use the word "heirs" or other term of inheritance. *White* v. *White,* 52 Conn. 518, 520; *Houghton* v. *Brantingham,* 86 Conn. 630, 639, 86 Atl. 664; *Burr* v. *Tierney,* 99 Conn. 647, 651, 122 Atl. 454. After thus giving her the residuary estate in the second paragraph, the testator adds, immediately following, the third paragraph above quoted.

The words "If my wife . . . should remarry" are apt to impose a condition. Cleaveland, Hewitt & Clark, Conn. Probate Law, Vol. 1, p. 564, § 427. But counsel for the widow claim that this clause is precatory only and not imperative and so does not amount to a testamentary disposition, and that in any event, the second paragraph exhausts the estate, rendering this third paragraph nugatory. It is true that the words "it is my desire" are primarily precatory, indicating a wish or expectation rather than an express intent or direction. On the other hand, "an expression may be imperative in its real meaning although couched in language which is not imperative in form; and, when it appears to have been used in this sense by the testator, the courts will give it due effect. If it is used by way of suggestion, counsel, or advice, with a view to influence, but not to direct, the discretion of the party, it will not raise a trust." 49 A. L. R. 13; *Russell* v. *United States Trust Co.,* 127 Fed. 445; 1 Perry on Trusts (3d Ed.) p. 114 (note); 1 Jarman on Wills (5th Ed.) p. 680. In a very similar case we said: "A

vast number of cases could be collected in which the words 'will,' 'wish,' 'desire,' and other words, have been held to create trusts, and probably as many where this result has not occurred. These words have no invariable construction. To cite and then attempt to distinguish these cases would in no way be helpful. In general, each will must stand by itself, and we have held that precedents are entitled to but little weight in the construction of wills, where the cases are not precisely analogous." *Loomis Institute* v. *Healy,* 98 Conn. 102, 123, 119 Atl. 31.

There are several rules of construction to be borne in mind in this connection. Not only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect. *Gold* v. *Judson,* 21 Conn. 615, 624; *Colt* v. *Colt,* 32 Conn. 422, 446; *Security Co.* v. *Hardenburgh,* 53 Conn. 169, 170, 2 Atl. 391. A construction which will disinherit the natural objects of the testator's bounty is not favored, and a construction which conforms, so far as possible, to our statute of distributions is to be preferred. *Conklin* v. *Davis,* 63 Conn. 377, 380, 28 Atl. 537; *Geery* v. *Skelding,* 62 Conn. 499, 501, 27 Atl. 77; *Lyon* v. *Acker,* 33 Conn. 222, 224. Account should be taken of the relative situations of the parties, the ties of affection subsisting between them, and the motives which would naturally influence the mind of the testator, as well as the existence of a moral duty on his part toward the party who will benefit from compliance with his desires and recommendations. *Poor* v. *Bradbury,* 196 Mass. 207, 209, 81 N. E. 882; *Foster* v. *Willson,* 68 N. H. 241, 38 Atl. 1003, 1004; *Warner* v. *Bates,* 98 Mass. 274, 277. The following observations from 49 A. L. R., at page 28, are pertinent: "If the objects of the supposed trust are certain and definite, if the property to which it is to attach is clearly pointed·

out, if the relations and situations of the testator and the supposed cestuis que trust are such as to indicate a strong interest and motive on the part of the testator in making them partakers of his bounty, and, above all, if the recommendatory or precatory clause is so expressed as to warrant the inference that it was designed to be peremptory on the donee, the just and reasonable interpretation is that a trust is created which is obligatory and can be enforced in equity against the trustee by those in whose behalf the beneficial use of the gift was intended." See also *Warner* v. *Bates,* 98 Mass. 274, 277. It has also been held that where the language is expressive of a desire or recommendation as to the direct disposition of the estate as distinguished from the use which the testator desires the legatee or devisee to make of it, it operates as a bequest or devise and is obligatory. *Byers' Estate,* 186 Pa. St. 404, 40 Atl. 524. In general it may be said to be well established that where words of recommendation, request, desire and the like are used in direct reference to the disposition of the testator's own property and show a clear intent to make such disposition without the intervention of any act by the first donee, they are ordinarily regarded as testamentary and imperative rather than precatory, the reason being that as the testator has the right to make such disposition as he wishes of his own property, the expression of that wish is equivalent to a command; and where such expressions are used to declare the disposition to be made of his property after his death, and not as a request or prayer directed to a devisee or legatee concerning such devise or legacy, they are treated as expressing the real intent of the testator, and have the force of a dispositive command and a positive direction, binding upon the court in the distribution of the estate. *Presbyterian Board of Foreign Missions* v. *Culp,* 151 Pa. St.

467, 25 Atl. 117; *Tooley's Estate,* 170 Cal. 164, 149 Pac. 574, 575; *Pforr's Estate,* 144 Cal. 121, 77 Pac. 825; *Bliven* v. *Seymour,* 88 N. Y. 469; *Moseley* v. *Bolster,* 201 Mass. 135, 87 N. E. 606; *Weber* v. *Bryant,* 161 Mass. 400, 403, 73 N. E. 203. These more or less familiar rules of construction, as well as others which could be mentioned, are all directed to the paramount consideration which governs the interpretation of wills in all their aspects—the ascertainment and effectuation of the real intent of the testator, and in the present case the question presented is whether he intended to conclusively govern the disposition of his property, by the language in question, or whether it is merely his suggestion as to what he hopes may be done, by the donee of his residuary estate, and leaving it to her discretion. *Harper* v. *Phelps,* 21 Conn. 257, 269; *Plaut* v. *Plaut,* 80 Conn. 673, 678, 70 Atl. 52. This was clearly stated in the case of *Burnes* v. *Burnes,* 137 Fed. 781, 792, where the court said: "The crucial question in the interpretation of this will is, did the testator intend to impose an imperative obligation upon his brothers to apply his estate, or their property, to the equal benefit of all the children of each of them, or to express a desire that they should do so, and to intrust to their discretion the exercise of the option to comply or to refuse to comply with his wish."

The case of *Clark* v. *Baker,* 91 Conn. 663, 101 Atl. 9, upon which counsel for the widow rely, clearly does not govern the case at bar. The language there used was: "I give, devise and bequeath all of my estate both real and personal to my husband, Jacob Baker, his heirs and assigns, but it is my wish and desire that after his decease so much as is left unused by him be divided equally between our adopted son Roy H. Baker and Ethel G. Baker." As pointed out in the opinion in that case, the use of the words "heirs and assigns" in

the gift to the husband and the reference to the unused portion, made it clear that it was intended that the husband should take the property absolutely and without condition, leaving him to dispose of the unused portion by his own act if he chose to conform to her wish.

In *Bennett* v. *Packer*, 70 Conn. 357, 39 Atl. 739, the testator gave the residue of his estate to his wife, and this provision was immediately followed by another which read as follows: "It is my will that if the said Susan M. Hooker again marries after my decease, I give, bequeath and devise to her, the said Susan M. Hooker, one third of my real estate and personal property for herself and her heirs," and it was held that while the first named provision, considered independently and by itself, gave to the widow an absolute title to the residuum, yet, when the two provisions were read together, it was apparent that the fee to two thirds of the residuum was a gift during widowhood, and that the final clause above quoted imposed a conditional limitation upon that two thirds by which upon remarriage of the widow, her estate determined *ipso facto* without any re-entry or other act by the heirs of the testator. We think the same result would have followed had the words used been "It is my desire" instead of the words "It is my will," the connection in which the phrase is used, the thought expressed and the object sought being essentially the same.

We attach no significance to the fact that there are two numbered paragraphs in the will before us expressing what we deem to be the single thought of the testator, and we read them together exactly as though the same language had been used in a single paragraph or sentence. We cannot suppose that he desired or intended to disinherit his minor children in the event that his wife married again, in favor of one who would

then be the wife of another. *Phillips* v. *Medbury,* 7 Conn. 568, 573. In the present will the gift to the son and daughter "if my wife Alida J. Cumming should remarry," shows an intent to create an estate in them "as full, complete, settled, and sure" as though he had used language unquestionably dispositive. *Loomis Institute* v. *Healy,* 98 Conn. 102, 123, 119 Atl. 31; *Gilman* v. *Gilman,* 99 Conn. 598, 613, 122 Atl. 386. Clearly nothing is left to the discretion or judgment of the widow; on the contrary, it is a specific direction to the proper authority, as to the disposition of his property in the event that the wife remarries. This being so, the precatory words used by the testator become imperative in their operation and binding upon the court. They are testamentary in character in the connection in which they are used in the light of the principles to which we have adverted, and result in the vesting of a fee in the widow in one third of the residuary estate of the testator, and a defeasible fee in the remaining two thirds which are charged with a conditional limitation by which upon her remarriage it passes in fee to the children share and share alike as provided in the third paragraph of the will.

In view of the conclusions we have reached as to the proper construction of the will, answers are required only to the seventh and eighth of the questions asked of us. Alida J. Cumming, the widow, took a fee in one third of the residuum and a defeasible fee in two thirds, the latter being subject to a conditional limitation, by which, in the event of her remarriage, her interest is *ipso facto* terminated. The two children Alida Estelle Pendleton and Thomas William Cumming took a remainder interest in two thirds of the residuum contingent upon the remarriage of the widow.

In this opinion the other judges concurred.