THE WEST HAVEN BANK & TRUST COMPANY,
CONSERVATOR, ET AL. *vs.* DAVID J. McCOY, EXECUTOR,
ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 3d—decided November 7th, 1933.

*Richard T. Mokrzynski,* for the appellant (defendant McCoy).

*Curtiss K. Thompson,* for the appellees (defendants John B. Hubbard *et al.*), with whom was *John H.*

*Weir,* for the appellee (plaintiff Clarence D. Hubbard, administrator).

HAINES, J. The will of John M. Hubbard of Orange in this State, who died in 1916, provided for his widow Laura B. Hubbard in the fifth paragraph thereof, as follows: "I give my beloved Laura full use and control of all the remainder of my property real and personal, principal and income, during her natural life. Whatever remains unexpended at her decease I wish to be divided equally among my own nephews and nieces, the descendants of my own father and mother."

.There were no children. The widow was named as executrix of the will. The entire estate consisted of real estate inventoried at $4120 and personalty inventoried at $6720.11, a total of $10,840.11. After carrying out other provisions of the will and filing her administration accounts in the Court of Probate she took the balance of the estate into her personal possession.

In February, 1930, a conservator was appointed for Laura B. Hubbard, and she died in November, 1930, leaving a will, of which the present appellant, McCoy, was named as executor.

The nephews and nieces of John M. Hubbard claim that certain items of property which were inventoried as a part of the estate of Laura B. Hubbard belong to the estate of John M. Hubbard, being the unexpended portion thereof in the hands of Laura at her death.

The questions thus raised involve the determination of the legal effect of that portion of the will of John above quoted. The appellees contend that by those provisions, the widow took only a life estate with a limited power of disposition, while the appellant claims she took a fee in the real and an absolute estate to the personal property, which constituted the residuary

estate of John. They also make the alternative claim that if Laura took only a life estate, yet that portion of the income which remained unexpended at her death became a part of her estate.

The trial court reached the conclusion that all the estate of John, both principal and income, which remained unexpended in the hands of Laura at her death belonged to the estate of John M. Hubbard and passed to his nephews and nieces at her death under the terms of his will above quoted.

At least two rules of testamentary construction are at once suggested by the language of the paragraph in question. One is that it must be so read as to harmonize so far as possible with the other provisions of the will and carry out the underlying intent of the testator as disclosed by the entire will. Another rule is that in case of doubt that construction shall be adopted which conforms most nearly to our statute of distributions and avoids disinheriting the natural objects of the testator's bounty. *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 Atl. 175; *Mooney* v. *Tolles,* 111 Conn. 1, 9, 149 Atl. 515; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 753, 136 Atl. 588.

The disadvantage under which the appellant labors is that the construction for which he contends requires that certain portions of this paragraph of the will be held of no effect, essentially surplusage. If the intent of the testator is held to give the widow a fee in the real estate and an absolute title to the personalty, the words "during her natural life" must be entirely disregarded; and we must also treat as inoperative the entire second clause, "whatever remains unexpended at her decease I wish to be divided equally among my own nephews and nieces, the descendants of my own father and mother," with the result that those who are found by the trial court to be the sole heirs of the

testator and the natural objects of his bounty, are to be disinherited in favor of the beneficiaries named in the widow's will, who may be strangers to his blood. This result, so at variance with the meaning of the testator's words, should not be permitted unless the language used in providing for the widow compels that conclusion.

It is the appellant's contention that the giving of the "full use and control" of all the residuum to the widow cannot be other than the passing of an absolute and complete title.

If it were conceded that, under certain circumstances, and where it was consistent with an intent found in other parts of the will, these words might be adequate to pass such a title, we still could not say that as here used they *necessarily* do so. One may use and control property, without the power to transfer the absolute title thereto to others by sale or gift. The word "control" as here employed does not suggest any broader meaning than "use," which has a recognized significance and is commonly employed in the creation of life estates. *Evan's Appeal,* 51 Conn. 435, 438. Moreover, the "full use and control" is here limited in the very sentence which grants it—"during her natural life." That conclusively negatives an intent that it should continue thereafter and permit the fund to pass to others by her will.

In *Brown* v. *Potter,* 114 Conn. 441, 159 Atl. 275, the testator gave, devised and bequeathed the entire residue of his estate to his wife "to be used and enjoyed by her as her own proper estate, and with full power to use, enjoy, control and dispose of the same in any manner except by will," and provided that upon her death all the estate that remained should go to nephews and nieces. We read the two paragraphs together and held that the testator intended the widow

to have the power to use and enjoy the income and to convert to herself the corpus during her life if she so elected, but without the testamentary power of passing the property to others after her death. One of the indications of this intent was held to be the fact that following the provision for the widow, he had given the fund to nephews and nieces after her death, as is done in the case at bar.

The chief difference in these two cases is the specific provision in the former, that the widow could not pass the property by will. In the present will, the words "full use and control"—"during her natural life," do not of themselves necessarily show an intent to grant her testamentary power, but rather the contrary.

In *Webb* v. *Goodnough,* 53 Conn. 216, 1 Atl. 797, a will gave, first, all the estate in fee to S; then followed a provision that the surviving husband, J, "is to have his support out of the property, and may dispose of any or all of the above property if necessary for his support. All that remains at his death is to be given" to S, "she to have the entire control and use during her lifetime; at her decease it shall be given to" J. W. S. We held (p. 218) that while the gift to S was in terms an absolute one, the subsequent provisions reduced it to a life estate to begin at the death of J; that though S then came into "the entire control and use" during her life, the portion of the fund which then remained passed at her death to the remainderman, J. W. S.

In *Mansfield* v. *Shelton,* 67 Conn. 390, 35 Atl. 271, the will provided: "All the rest and residue of my estate . . . I give, devise and bequeath to my said wife, to be used and appropriated by her, as much as she may wish for her happiness, without any restrictions or limitations whatsoever," and upon her de-

cease whatever remained to go to other parties. We held it to be settled law in this State, that "a life estate expressly created will not be converted into a fee, absolute or qualified, or into any other form of estate greater than a life estate, merely by reason of there being coupled with it a power of disposition, however general or extensive." And the general rule was held to be that "the question as to whether the primary gift is in fee, so as to exhaust the entire estate, is in each case to be decided upon a careful examination of the entire will, aided by legitimate extrinsic evidence, to ascertain the actual intent of the testator; which intent, when so discovered and made obvious, is controlling." (p. 394.)

Thus, if the appellant's claim that the words "full use and control" point to an absolute rather than a life estate, were conceded to be sound, yet it may be cut down to a life estate by appropriate subsequent language in the will. In *Meriden Trust & Safe Deposit Co.* v. *Squire,* 92 Conn. 440, 446, 103 Atl. 269, it was held that such an estate though given in absolute terms, would "be cut down to a lesser one by subsequent provisions of the instrument clearly showing that it was the testator's intention to give such lesser estate. The subsequent language, to have that effect, must not be of doubtful meaning or uncertain in its indication of the testamentary intent, and be equivalent to a positive provision."

The subsequent language in the present will is, we think, equivalent to a positive provision disposing of the property by his own act without invoking or asking any action by the widow, and thus is not to be treated as merely precatory. We have heretofore stated the rule on this point as follows: "In general it may be said to be well established that where words of recommendation, request, desire and the like are

used in direct reference to the disposition of the testator's own property and show a clear intent to make such disposition without the intervention of any act by the first donee, they are ordinarily regarded as testamentary and imperative rather than precatory, the reason being that as the testator has the right to make such disposition as he wishes of his own property, the expression of that wish is equivalent to a command; and where such expressions are used to declare the disposition to be made of his property after his death, and not as a request or prayer directed to a devisee or legatee concerning such devise or legacy, they are treated as expressing the real intent of the testator, and have the form of a dispositive command and a positive direction, binding upon the court in the distribution of the estate." *Cumming* v. *Pendleton,* 112 Conn. 569, 575, 152 Atl. 175.

We comply with the appellant's request and add to the finding the statement desired, which is to the effect that the widow made an attempt to transfer to her own name certain savings accounts standing in the name of the testator and in which she had theretofore deposited some interest which had accumulated on the residuary estate, but the bank refused to make the transfer. See *Bishop* v. *Groton Savings Bank,* 96 Conn. 325, 114 Atl. 88. This act of hers, however, even if it had been successful, would have been without legal significance in this case. The testator treated both principal and income as a single fund and so long as any part of that fund remained in her possession and control whether standing for the time being in the name of the testator or in her name, it continued to be a part of that fund, subject to being expended, in whole or in part, by her during her lifetime, and the entire amount which remained "unex-

pended" at her death passed to the nephews and nieces.

For the reasons which we have stated we reach the same conclusion at which the trial court arrived.

Error is claimed in the refusal of the trial court to allow counsel fees. The complaint does have some of the aspects of an action of interpleader but it contains no claim for judgment that the parties interplead. See Practice Book, p. 395, Form 160. It does ask for a declaratory judgment and we must treat it as an action therefor. Neither the statutes nor the rules provide for an allowance of counsel fees in such actions. General Statutes, § 5334; Practice Book, p. 255, § 62 and following.

There is no error.

In this opinion the other judges concurred.